TOYAHO CREEK IRRIGATION COMPANY V. T. A. HUTCHINS ET AL.

Decided May 13, 1899.

1. **Irrigation Company—Statutory Requirements—Filing Map of Canal.**

The filing of a map under the Act of March 10, 1875, granting a right of way over public lands for irrigation canals, and providing that a map of the proposed canal shall be filed in the General Land Office, and that no public lands shall be located within three miles of the canal so designated, when running over the public domain, by anyone other than the canal company, provided that the company shall commence work within a year thereafter, does not,—in view of the Act of April 25, 1874, article 5, section 36, declaring that unless such companies shall commence active operation within three years from the filing of their charter they shall be dissolved,— vest in the company a right in presenti to an easement over the land traversed by the proposed canal.

2. **Same—No Right Over Private Lands Granted.**

A right of way over private lands is not granted by the Acts of March 10, 1875, and April 23, 1874, giving a right of way over public lands for irrigation canals and providing that canal companies shall have free use of the water of all streams, and that damages for any property appropriated shall be assessed and paid for as in case of railroads; and such companies must acquire a right of way over private lands by grant or condemnation.

3. **Same—Acceptance of Grant by Corporation.**

There is no acceptance of the right of way over public lands by a corporation organized by the owner of several contiguous surveys upon which there is a large spring, nominally joining with him two other persons to form an irrigation company, under the Act of March 10, 1875, which grants a right of way over public lands for canal purposes, and provides that the business affairs of the company shall be transacted through a president and two directors, when the owner constructed the canal over his own and adjoining public lands, and used part of the water to irrigate his own property, and sold the rest of it without action of the directors, and without accounting to the corporation, which never did any act in furtherance of the purpose of its creation.

4. **Same—Easement—Revocation.**

A land owner who gives an easement across his land to an irrigation company which he forms will not be estopped from revoking the permission to use his land at pleasure if the company made no improvement thereon.

**5.   Same—Power to Convey Water Right.**

An owner of land who nominaly joined two other persons with him to form an irrigation company under the Act of March 10, 1875, and who then constructed the canal over his lands and adjoining public lands, and used part of the water to irrigate his own property and sold the rest of it without action of the directors and without accounting to the corporation, which never did any act in furtherance of the purposes of its creation, has implied authority, under the circumstances and as president of the corporation, which was authorized to mortgage its property and franchises, to convey part of the canal and water necessary to the beneficial use of adjoining land which he had sold in payment of a mortgage conveying the canal franchise, he also having acquired all the stock of the company before the mortgage was given.

**6.   Same—Deed Conveying Water Right.**

A conveyance by an owner of arid lands who formed a corporation to build an irrigation canal across them from a spring on contiguous lands owned by him making them valuable, "together with all and singular the rights, members, hereditaments, and appurtenances to the above belonging or in any wise incident," passes the ditches and the water necessary for the beneficial use of the lands, where, in the meantime, the grantor had acquired all the stock in the company.

APPEAL from Reeves.   Tried below before Hon. W. R. SMITH.

*Edwards & Edwards, T. J. Hefner, George Estes,* and *B. D. Tarlton,* for appellant.

*W. H. Ford* and *R. D. Gage,* for appellees.

CONNER, CHIEF JUSTICE.—This is an appeal from a verdict and judgment of the District Court of Reeves County in appellee's favor, said verdict having been peremptorily directed upon conclusion of the evidence offered by all parties, and the action of the trial court in so directing a verdict and in so rendering judgment for appellees is attacked in various forms by the assignments of error herein.

The plaintiff below in substance alleged that it was duly incorporated; that on July 23, 1893, it was the owner in fee simple and in possession of a certain canal or irrigation ditch, commonly known as the "Toyaho Creek canal or ditch," situated in said Reeves County, "together with the right of way over the lands through and over which said canal runs;" that on said date defendant T. A. Hutchins and other defendants ejected plaintiff and yet retained possession, appropriating the water thereof, to plaintiff's damage $10,000.   Said canal is then described, specifying course and distance, as "twenty-five feet on each side from the center line of said canal."   It was further alleged "that for more than ten years next prior to the 23rd day of July, 1893, its use of said canal and water thereby and thereunder was open, notorious, adverse, exclusive, uninterrupted and acquiesced in, and its right of way and water supply unimpaired, and plaintiff, prior to July 23, 1893, by limitation and prescription, was the legal owner in fee simple, and held in possession said canal, water rights, and right of way."

In the view we have taken of the case, it will be unnecessary to set out the answers, further than to say in general terms that appellees pleaded general denial, plea of not guilty, and a special plea of estoppel.

The facts, in so far as necessary to state them, are as follows:

On April 17, 1895, plaintiff was incorporated by the following instrument:

"*The State of Texas, County of Bexar.*—Be it known, that under the provisions of an act entitled An Act to encourage the construction of canals and ditches, for navigation and irrigation, passed by the Legislature of the State of Texas and approved the 10th day of March, A. D. 1875, Daniel Murphy, of the county of Presidio and State of Texas, and N. O. Green of the county of Bexar and State of Texas, and Samuel Maverick, of said county and State, and their associates, do hereby constitute themselves a body corporate and politic, under the name and style of the 'Toyaho Creek Irrigation Company,' to construct, own, and operate a canal of not less than nine feet in width and three feet in depth for the purpose of irrigation and manufacturing.

"The said canal shall be wholly in the said State of Texas and county of Pecos; and shall commence at a point on or near the head, not over ten miles from said head of Toyaho Creek, in the said county of Pecos and State aforesaid, and run from thence down the valley of the said Toyaho Creek, by the most practicable route for forty (40) miles in the said county of Pecos.

"The water afforded by said canals shall be used for·irrigation and manufacturing purposes, under the direction and management of said company. Said corporation shall have existence for the term of one hundred and fifty years, and its business affairs shall be transacted in said locality of Toyaho Creek and at its principal office, through and by a president and two directors. For the first year Daniel Murphy shall be president, N. O. Green and Samuel Maverick directors of said corporation. The capital stock of said company shall be three thousand dollars ($3000) in shares of one hundred dollars ($100) each, which stock may be increased to twenty thousand dollars ($20,000) at the pleasure of the company.

"In testimony whereof we hereunto set our hands at San Antonio, this 14th day of April, A. D. 1875.

(Signed)    "Daniel Murphy,<br>"N. O. Green,<br>"Samuel Maverick."

This instrument was duly acknowledged before a notary public, and filed in the Department of State April 17, 1875.

At the time this charter was taken out Daniel Murphy owned in fee simple a large survey in the name of the Antonio Ball survey No. 256, upon which was a large spring, or lake formed by a number of springs, which constituted the sole supply of the waters involved in this suit. He also then owned in like manner surveys Nos. 257, 258, 259, and 260, adjoining and extending from said Ball survey in a northeasterly direction approximately five miles down the valley of the stream proceeding from said springs, and known as Toyaho Creek.

For the purpose of complying with the letter of the law, Daniel Murphy gave to N. O. Green and Samuel Maverick one share each of the capital stock named in the charter, but there is no evidence that any stock was in fact issued or any transfer thereof made upon the books of the company, nor was there any proof that said Green or Maverick owned or at any time acquired any land along the course of said stream or in any way invested or expended any sum in the enterprise, and the fair inference from the evidence is that Murphy's purpose in so incorporating was that he might thereby avail himself of the benefit of the land donations provided for by the act approved March 10, 1875, and at the same time irrigate his own lands, the names of Maverick and Green being loaned to him as mere conveniences to enable him to do this.

After so taking out said charter, Daniel Murphy began the construction of the canal in question. In October, 1876, he caused a survey and plat thereof to be made, which was filed in the General Land Office, December 2, 1876. The plat and survey so filed indicated the proposed location of the ditch or canal substantially as described in plaintiff's petition, save that it extended on down the valley of Toyaho Creek in a northeasterly direction some six or eight miles further than as so described in said petition.

The canal so begun by Murphy in the fall of 1875 was by him and at his sole expense completed as now located, to wit, about nine miles in a general direction from said spring, in the fall of 1879. The record fails to disclose any further extension. No right of way was sought or acquired by deed or condemnation proceedings.

On November 17, 1884, said Green and Maverick executed an instrument conveying to Daniel Murphy "all their title and interest" in and to all lands, franchises, etc., owned by them in the irrigation company. The consideration for this instrument does not appear. Its recitation in this particular was, "For and in consideration of many good and valuable considerations moving us thereunto, do bargain, sell," etc.

On September 20, 1889, as "agent and attorney in fact" for the Toyaho Creek Irrigation Company, Daniel Murphy filed with the clerk of the County Court of Reeves County the sworn statement required by section 5 of the act approved March 19, 1889, and on May 10, 1890, he, for said company, caused said charter to be recorded in the deed records of said county.

From August 24, 1886, to August 24, 1888, Daniel Murphy duly acquired by purchase the fee simple title to the south half of section 78, sections 92, 38, 37, and 625, along and over which said canal extends. The ownership of sections 51, 93, 77, 99, the north half of 78 and 98, does not appear. Said canal also extending over and along these surveys.

The record further shows that from May 1, 1886, to January 3, 1893, Daniel Murphy executed various trust deeds on the lands owned by him, to secure moneys loaned by the J. B. Watkins Land and Mortgage

Company, aggregating $29,900; that upon January 3, 1893, Daniel Murphy conveyed to J. B. Watkins the following lands mentioned above, to wit: Surveys 256, 257, 258, 259, 260, 625, school section 38, section 37, south half section 78, and school section 92, being all the lands claimed herein by appellees, for the consideration of $4063.75 cash, and subject to mortgages aggregating $22,900. This deed was in the ordinary form of a general warranty deed, among other things containing the following laguage: "Together with all and singular the rights, members, hereditaments, and appurtenances to the above belonging or in anywise incident or appertaining."

July 10, 1893, J. B. Watkins conveyed the same lands to one Wilkins for a recited consideration of $45,000, and Wilkins in turn on July 18, 1893, conveyed all of said lands last mentioned to appellee T. A. Hutchins for a consideration of $85,050, of which $10,050 was in cash, remainder secured by vendor's lien notes. Appellee Clements claims under execution sale against T. A. Hutchins, April 26, 1896, immediately after which he, Clements, went into possession and has since so remained. Daniel Murphy remained in possession up to the date of Watkins' deed in April, 1893, when Hutchins dispossessed Murphy.

During Murphy's possession he irrigated about 2000 acres of his own land and from 300 to 700 acres for others, charging therefor reasonable water rates, it being shown that Reeves County and said land were situated in an arid part of Texas, and that irrigation is necessary for agricultural purposes. The evidence further showed that without water and irrigation said lands were of little or no value, and tended to show that the entire supply of water was not more than sufficient to properly irrigate the individual lands of Murphy.

It will be thus seen that appellees' claim to the land, right of way, ditch and water privileges involved in this suit is dependent upon the deed from Daniel Murphy to J. B. Watkins, of date January 3, 1893, and the effect to be given thereto under the facts of this case. Appellant's claim, as stated in the brief herein in its behalf, is by grant, by dedication, and limitation; and this asserted title will be first examined.

The act approved April 23, 1874, provided that private corporations for profit might be created by the voluntary association of three or more persons in the manner provided in the act, among other things, for "the construction and maintenance of canals for the purposes of irrigation or manufacturing purposes." It was further provided by such act that every canal corporation should have the power to cause examination and survey of its route, and to enter upon lands for that purpose, to take and hold such voluntary grant of real or other property as should be made to it to aid in the construction and maintenance of its canal and ditches, to construct its canal on or along any stream of water, to borrow money and to mortgage its corporate property and franchises to secure the same, and it was further provided that damages for any property appropriated should be assessed and paid for as in case of railroads.

In 1875 "An Act to encourage the construction of canals and ditches

for navigation and irrigation" was passed by our Legislature and approved March 10, 1875. It was under this act that appellant was incorporated. It provided for grants of public land for canals constructed in accordance therewith, granted right of way, not to exceed 150 feet in width, over all public, university, school, and asylum lands, and provided that such canal companies should have the free use of the water of the rivers and streams of this State.

If appellant at any time ever received a grant of right of way and to construct its canal over any of the lands herein claimed by appellees, it must have been by virtue of this act, for no conveyance of any such right was ever made by Daniel Murphy or other person, and such legislative grant, if any, is not important, except in so far as it relates to school sections 38 and 92 hereinbefore mentioned, these two sections of land traversed by appellant's canal alone being within the purview of said act.

The date of the location and survey of the school sections now under consideration does not appear in the record, except that it appears that they were so located and surveyed prior to the designation or location thereon of the canal in question. If it be assumed that the waters of a spring or springs such as shown in this case, situated on land owned by an individual person in fee is within the purview of our irrigation laws, and that after such location and survey the Legislature had power, under the Constitution of 1869, to "grant" any part of such lands for any purpose other than that provided, or to impose thereon for any other purpose, such use, servitude, right or easement as contemplated by said Act of 1875, yet to become effective as a grant there must have been an acceptance of the grant, and we fail to find in the record any evidence of such acceptance by or on behalf of the appellant corporation as such. The evidence shows that Daniel Murphy entered upon the lands in question and constructed the canal thereon, but it fails to show that he did so in the name of or for appellant. By the statute in force at the time and by the terms of appellant's charter, its business "affairs shall be transacted   *   *   *   through and by a president and two directors." Bank v. Earl, 13 Pet., 519.

It may be said that the act of survey and filing of map of the proposed canal in the General Land Office was an act  of acceptance. By reference to section 6 of said Act of March 15, 1875, it will be seen that the apparent purpose of this provision was to prevent the location of any public lands within five miles of such designated line, when running over any part of the public domain, by any other company or person, and thereby inferentially at least giving to the company so designating its line the right to locate the lands granted by the act along the line of its canal. But we think it can hardly be said that the mere designation of the line operated ipso facto to vest in the company so designating a right in presenti to the easement over the lands traversed by the designated line. The very section in question is coupled with the proviso that the *company* making said designation shall actually commence the work of construction within one year; and section 36, article 5, of the

Act of 1874, in effect declared that corporations that should not commence active operation within three years from the filing of its charter should be dissolved and its charter become void.

If the company in question, as contradistinguished from Daniel Murphy, ever took any action in constructing the canal, we fail to find evidence thereof in the record. Section 15 of the general incorporation law of 1874 provided that a majority of the *directors* or *trustees* should be competent to transact all business of the corporation, and section 17 provided that they might adopt by-laws for the government of the corporation. No action whatever by a majority of the directors of appellant corporation, until after the institution of this suit, has been shown. No by-law authorizing Daniel Murphy to be the sole arbiter and manager appears. All acts relied upon in behalf of appellant corporation are acts of Daniel Murphy, not only consistent with but evidently done in his individual interest. We fail to see merit in a construction of the facts that, in effect, imputes to appellant all acts of the individual Murphy that may be construed as in aid of its asserted title, and to Murphy alone of such acts as are in derogation of its claim.

What we have said applies, in part at least, also to the contention made that appellant acquired a right of way over the railway and other lands here in controversy by limitation. As before indicated, we do not think the acts of 1874 and 1875, under which appellant was incorporated, are to be construed as ipso facto granting a right of way over any lands. These laws, as well as all other laws on the subject we have noticed, merely gave the right upon compliance therewith to the use of the waters of the rivers and streams of the State for the purposes of irrigation, necessarily remitting such companies as should be incorporated to the right thereby conferred of acquiring right of way from the riparian owners, if any, by grant or condemnation. See Irrigation Co. v. Vivian, 74 Texas, 170.

Ordinarily an easement of the character in question can only be acquired by grant or condemnation. Such easements are denominated interests in land which can be conveyed only by deed or grant. Railway v. Durrett, 57 Texas, 51; Shepherd v. Railway, 2 Texas Civ. App., 538, and authorities therein cited. It may be admitted that such interests may also be acquired by limitation; but in every such case the burden of proof is upon him who invokes such title to show a concurrence of all the necessary elements. See Rhodes v. Whitehead, 27 Texas, 306; Washb. on Easements, supra, p. 151.

The claim to and the exercise of the right must be *adverse* to the owner of the land. Railway v. Wilson, 83 Texas, 157; Railway v. Gaines, 27 S. W. Rep., 266; Washb. on Easements, p. 150, sec. 26, et seq.; Wood on Statute of Lim., 2 ed., p. 618, et seq. Our statute defines an adverse possession as "an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another." Sayles' Civ. Stats., art. 3349. "Possession of lands must be actual, continuous, visible, notorious, distinct, and

hostile." See note 4 under the article of the statute quoted, and authorities therein cited. And it was so alleged in appellant's petition.

Within the meaning of these rules, it certainly can not be successfully contended that the appellant corporation at any time held adverse possession of any part of the lands owned at the time individually by Daniel Murphy. As to these lands its possession, if any, was not "commenced and continued under claim of right inconsistent with and hostile" to the claim of Daniel Murphy. If of these lands it ever had possession, it began and continued, so far as shown by the record, as a mere permission. A right so acquired is ordinarily revocable at pleasure. Washb. on Easements, pp. 152, 155, 213. We are not now discussing a right by gift and estoppel, but title in appellant by prescription.

As we construe the record, there is no basis in proof for title by limitation in appellant to a use or easement in any of the lands involved in this suit. The railroad sections involved were purchased by Daniel Murphy as his individual property from August, 1886, to August, 1888. We think the evidence in the record fails to support the conclusion that from the date of its charter to the date of the deed from Maverick and Green to Murphy, November 17, 1884 the *incorporation* did any act in furtherance of the purposes of its creation. In addition to what we have before stated, it is not shown that it issued any stock, ever passed and adopted by-laws as prescribed by the law, ever procured or used a seal, ever held an election for officers, ever rendered in its name any property for taxation or paid taxes thereon, ever employed or paid for labor or material, made water contracts, collected rents, conveyed rights to the use of water, or did any other thing. But if it be assumed that from the date of the beginning of the canal to Maverick and Green's deed to Murphy, Murphy's possession was that of the incorporation, yet it did not continue ten years, the period necessary to prescribe, and it affirmatively appears, we think, that after this date Daniel Murphy claimed to own and have the right to control the lands, canal, and ditches, and from this time, to wit, the fall of 1884, to the institution of this suit was less than ten years.

We conclude from the record that if there was ever any inception or continuance of a right in appellant to the right of way sued for, it was lost in fact by the prescriptive acts of Daniel Murphy. We must distinguish between Murphy and appellant corporation. It is thus appellant seeks to recover. The only rights appellant can claim are such as it acquired as a legal entity, as the artificial being created by its charter. If we do so distinguish between appellant corporation and Murphy, we find that the latter is the sole actor throughout. He used almost the full capacity of the stream in the irrigation of his individual lands, without grant from appellant, not accounting to the company therefor. He never accounted to appellant for rents collected. He claimed the canal, lands, stock and all as his own. He exclusively managed and controlled the entire business. He claimed to have the right to convey it, designating

the deed from Maverick and Green to him as a deed to the charter.  He executed mortgages conveying the lands, canal, and water rights.  We quote the following language from one of the mortgages so executed by Murphy: "It is also intended to mortgage all of the right and franchises of the said Daniel Murphy and Susan Murphy in and to a certain irrigation ditch which runs through a number of said surveys."

So that we think it must be held that Murphy, prior to his deed of January, 1893, acquired all of the property rights of the appellant corporation in the property involved in this litigation.  If we are correct in this, such conclusion also disposes of the contention of title in appellant by gift or dedication.  We will not dwell on this branch of the case, but will in passing merely say that the term dedication is used generally in relation to such rights as may be so acquired by the public.  See Anderson's Law Dict. and Black's Law Dict., title "Dedication," and case and notes of City of Cincinnati v. Lessee of White, 6 Pet., 431.  In each case we have been able to find where a mere gift of the kind has been sustained, it was upon the ground of estoppel.  Had it appeared that appellant had not only taken possession under gift established by a preponderance of evidence, but had also made valuable improvements, so as to make it inequitable in Murphy to revoke it, then indeed we could sustain such title; but that is not this case.  See Railway v. Jarrel, 60 Texas, 267; Shepard v. Railway, 2 Texas Civ. App., 540.

So that, to conclude this branch of the case, we have been unable to find any evidence in the record, in whatever view it be taken, that establishes title in appellant to the property sued for, in so far as it relates to the particular lands and interests conveyed by said deed of January 3, 1893, under which appellee's claim.  There is another view of the case, however, that we will notice.

It is undisputed that at and before Murphy's deed to J. B. Watkins of January 3, 1893, he individually owned all of the lands herein involved, and all the stock or right to stock of appellant corporation, and appellees assert the proposition that in such case his deed operates to convey every interest in the lands therein mentioned; and we are of the opinion that under the facts of this case this contention is well taken.

It is well settled that deeds shall be so construed, if possible, as to give effect thereto, and that a grant of land includes all rights in the grantor necessary to the beneficial use of the thing granted.  See Washb. on Easements, 4 ed., pp. 49, 52, 53.  In the case before us it is shown that water applied in the way of irrigation is absolutely necessary to the use of the land involved for agricultural purposes.  Where such is the case, the rules ordinarily governing the rights of riparian owners have no application.  In such case the owner of such land may lawfully use the water not necessary for domestic purposes, to the exclusion of the owner below.  See Irrigation Co. v. Vivian, 74 Texas, 170, and authorities therein cited.

It must certainly be held that the owner of lands owns also all ordinary springs and waters arising thereon.  Murphy owned in fee simple

the land upon which was situated the source of the entire water supply, which it appears was not so greatly in excess of the amount necessary to irrigate his own lands, and we gravely doubt the application of our irrigation laws to such a case. In any event, we think his deed of January 3, 1893, under the circumstances of this case, was sufficient to convey and in fact did convey to the grantee therein named, not only the land therein described, but also all of the ditches and waters within the power of Murphy to convey, necessary for the beneficial use of said lands, without specific mention. It has been so expressly held in the following cases: Tucker v. Jones (Mont.), 19 Pac. Rep., 571; Simmons v. Winters (Ore.), 27 Pac. Rep., 7; Sweetland v. Olsen, Id., 339; Frank v. Hicks (Wyo.), 35 Pac. Rep., 475; Smith v. Water Co. (Utah), 52 Pac. Rep., 283; Carson v. Gentner (Ore.), Id., 506; Williams v. Harter (Cal.), 53 Pac. Rep., 405; Insurance Co. v. Childs (Colo.), 54 Pac. Rep., 1020. See also Kinney on Irrigation, sec. 267; Washb. on Easements, pp. 49, 52, 53.

We think it must also be held, under the circumstances of this case, that it was within the power of Murphy to convey the water, canal, ditches, etc., necessary to the beneficial use of the lands in controversy. He was the sole owner of the whole at the time. It must have been within the contemplation of the parties at the time. He received a large sum in cash, and left the land subject to mortgages in large amount in terms conveying such canal franchises, the land being valueless without such canal and water. The transaction is strongly suggestive that this sale was in fact the method adopted of paying off such mortgages, the cash received being for Murphy's equity of redemption. Under the law of its creation, the appellant corporation was empowered to mortgage its property and franchises, and it would seem that under the circumstances equity would at least regard Murphy as the agent of appellant with power to borrow money and execute mortgages. Murphy in filing the affidavit required by the Act of 1889 styled himself as "agent and attorney in fact." .

Under the most favorable construction of the facts, for long years Murphy was permitted to be the sole actor, without any act on his part being questioned until the institution of this suit. It would seem inequitable to now permit appellant to repudiate the acts of its agent. No private person would be permitted to do so under the same circumstances. Why should appellant be held as in a more favorable position? Many instances may be found where corporations have been held estopped to deny the acts of their agents, even where unauthorized. See 4 Thomp. on Corp., sec. 5258, et seq. As perhaps also illustrating some of the views herein expressed, see the case of Bell & Coggeshall Company v. Kentucky Glass Works Company, 50 Southwestern Reporter, 3, where a mortgage executed under circumstances somewhat similar to the mortgages and circumstances of this case was upheld, numerous authorities being cited. In this Kentucky case the mortgage was executed in the

name of the Glassworks company and the principal stockholders, but without authority of the board of directors.

It has often been held that where power in a grantor in fact exists, his deed will, if in terms sufficient, convey all the interest in his power to convey, regardless of the power or the capacity manifested on the face of the papers.

In the case of McElroy v. Minnesota Percheron Horse Company, 71 Northwestern Reporter, 652, it was said: "A corporation may so conduct its affairs as to confer by implication upon its president powers much beyond those strictly incident to his office, even to the extent of exercising the entire power of the corporation which by the articles is vested solely in the board of directors." That was the case of a trading corporation, where the president owned all shares save a few held by others for the purpose of keeping up the organization, and where the president had been permitted for some five or more years to transact the business, and the court upheld the contract of the president to convey practically all of its property—real estate.

Mr. Thompson, in his work hereinbefore cited, volume 5, section 6653, in stating the case where all the shares pass into the hands of a single person, draws the conclusion from the authorities cited, that "such sole owner does not become the legal owner of the property of the corporation, but he owns merely the *shares*, though he would probably be regarded as the equitable owner." A fortiori in this case would it seem that Murphy should be regarded as the equitable owner, for the *legal* title to the *property* involved does not appear ever to have passed out of him into the corporation. If in fact Murphy was the equitable owner of the canal, right of way, etc., it would seem that his deed to the land, under the circumstances, should be held to convey such rights. Again, the same author, volume 4, section 5096, states that it has been held that where all the shares have passed into the hands of a single owner, and he thereafter assumes to convey, by mortgage, the corporate property, the mortgage deed is good in equity, citing Swift v. Smith, 65 Maryland, 428-433, 57 American Reporter, 339. Mr. Thompson concludes that "this decision seems to express the sound conclusion."

In the case of Assurance Company v. Davenport, 16 Texas Civil Appeals, 283, decided by this court, one J. H. Davenport sued the company on policies of insurance. The companies defended on the ground, among others, that Davenport was not the owner in fee simple of the land upon which the insured building stood, as warranted by the assured. It appeared that the assured, J. H. Davenport, claimed by deed from one W. M. Davenport, executed in his individual capacity. It also appeared that in fact the land and property was held and owned by the Denton Mill and Elevator Company, duly incorporated, by deed to it, but that before such conveyance by W. M. Davenport he became substantially owner of all the capital stock of the mill company, and was conducting its business. This court held that, "being the owner of all its stock, he was likewise the owner of all its property, and that his deed to

J. H. Davenport conveyed the sole, unconditional, absolute fee simple title." Our Supreme Court denied writ of error in this case.

We conclude, upon the whole case, that it has not been made to appear that there was error in the proceedings below, and that the judgment of the District Court of Reeves County should be affirmed. In so ruling, however, we do not wish to be understood as determining the rights, if any, of appellant or Daniel Murphy, as the case may be, to the ditches, canals, and right of way upon the lands not owned by appellees.

Judgment affirmed.

*Affirmed.*

Writ of error refused.