KNOX CITY MILLING CO. v. WARREN et al.†

(Court of Civil Appeals of Texas. Ft. Worth. Oct. 21, 1911. On Motion for Rehearing, Dec. 2, 1911.)

1. CORPORATIONS (§ 432*)—NOTES—EXECUTION—AUTHORITY—EVIDENCE.

Evidence *held* to show that the general manager of a corporation, who executed the note sued on, had authority from defendant corporation so to do, though no express authority was shown.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1726–1737; Dec. Dig. § 432.*]

On Motion for Rehearing.

2. CORPORATIONS (§ 426*)—AGENCY OF GENERAL MANAGER—NEGOTIABLE PAPER—RATIFICATION.

Where the general manager of a corporation transacted all its business, purchasing material, machinery, etc., for which he borrowed money on the corporation credit, all to the knowledge of and without objection from the board of directors, the corporation may not subsequently deny his authority to execute a note in the corporate name to pay a loan of which the corporation had the benefit.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1702–1716; Dec. Dig. § 426.*]

Appeal from District Court, Knox County; J. A. P. Dickson, Judge.

Action by R. W. Warren against the Knox City Milling Company; certain persons intervening. Judgment for plaintiff and interveners, and defendant appeals. Affirmed.

R. E. Carswell and Coombes & Coombes, for appellant. Jas. A. Stephens, for appellee Warren.

CONNER, C. J. This suit was instituted by appellee Warren against the Knox City Milling Company to recover upon a promissory note alleged to have been executed by the appellant company for the sum of $2,855

on April 23, 1910. Appellant answered denying the execution of the note and charging that it was without consideration and void. Several other parties intervened and set up claims of their own; but, inasmuch as no question is raised that relates to these claims or parties, they need not be further noticed. A trial before the jury resulted in a verdict and judgment for the appellee and interveners.

[1] The material question raised by the assignments of error is whether the evidence supports the contention that J. W. Moore, who signed the name of the appellant corporation to the note in controversy, had authority to so do.

The undisputed evidence on the subject under consideration is substanially as follows: During the early part of the year 1909, J. W. Moore came to Knox City with the view of promoting a milling business, and an agreement was finally entered into by the terms of which certain citizens of Knox City made certain donations in aid of the project, and certain others, including appellee, agreed to take certain numbers of shares of stock in the association, which it was agreed should thereafter be duly incorporated under the laws of Texas. J. W. Moore bought certain lots for the location of the proposed mill and began its erection. It was completed and began operation with a considerable quantity of grain for grinding some time prior to December 1, 1909. The association was designated as the Knox City Milling Company, and J. W. Moore was from the beginning made the general manager with full authority to do any and all things necessary or proper in the aid of the enterprise. In the language of one of the witnesses: "Moore had full control of the milling company's business. * * * He had all power to sign anything for the milling company that he wanted to, or to pay out any money that he wanted to. In other words, he was the general manager for the milling company." As such he purchased material not furnished by himself necessary for the erection of the mill and all of the grain referred to. The principal purchases of new machinery, grain, etc., were with money borrowed by J. W. Moore from the Farmers' State Bank, of which appellee was the president. The loan to Moore was advanced upon the credit of the milling company, but by direction of J. W. Moore the debit entries upon the books of the bank were made in the name of J. W. Moore. Early in December, 1909, pursuant to the original agreement, articles of incorporation were prepared naming J. W. Moore and appellee, among others, as directors, which were duly forwarded and approved by the Secretary of State on January 10, 1910. No meeting of the stockholders was ever thereafter had, save that they appointed J. W. Moore

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

as general manager with full authority as by him before exercised, and issued to subscribers who had paid for their stock the several amounts of stock to which they were entitled; J. W. Moore thus receiving 114 shares of the par value of $100 each. There were but 20 other paid-up shares, of which 4 were issued to appellee Warren. Thereafter J. W. Moore directed the bank to change the debit entries from J. W. Moore to the Knox City Milling Company. Among the items of indebtedness existing in the name of J. W. Moore at the date of the incorporation referred to was one of approximately the sum of $2,800, for which J. W. Moore gave a promissory note signed by the Knox City Milling Company by him as general manager. A short time later, when payment of the note last referred to was sought by the bank, J. W. Moore induced the appellee to advance the money necessary therefor, which amounted to the sum of $2,855, for which the note sued upon in this suit was executed and delivered to appellee by J. W. Moore signing the name of the Knox City Milling Company thereto by him. It is further undisputed that the Knox City Milling Company after its incorporation continued to operate the mill by buying, grinding, and selling in precisely the same manner as before. The paid-up stock issued to and received by J. W. Moore represented in the greater part, if not altogether, the value of the machinery, material, and other property owned by him and used for and in the erection of the mill. The remaining paid-up stock we assume was paid for in money; it not otherwise appearing. Nothing in the evidence indicates that the directors of the incorporation were ignorant of the circumstances hereinbefore stated, or expressed any dissatisfaction with Moore's management of the business, or of any of his acts in relation thereto. On the contrary, the evidence indicates that the directors acquiesced in all that he did; one of the directors being the bookkeeper part of the time for the milling company.

Under such circumstances, authority from the appellant corporation to J. W. Moore to execute the note in controversy is to be implied, and, in the absence of evidence to the contrary, is conclusive. From the beginning there was no substantial change in the status of the parties or property, save that the association became incorporated, and the mere failure of the directorate to meet and formally give specific authority to execute the note sued upon will not operate to shield the corporation, in view of the knowledge and long acquiescence of the directors and of the general powers undoubtedly conferred upon Moore, the substantial owner. Especially is this true when we consider the further undisputed fact that the corporation received and availed itself of the benefits, not only of the moneys furnished by the bank and appellee, but also of all of Moore's acts in the promotion and management of the business both before and after the act of incorporation. See Toyaho Creek Irr. Co. v. Hutchins, 21 Tex. Civ. App. 274, 52 S. W. 101; Grape, Sugar & Vinegar Mfg. Co. v. Small, 40 Md. 395; Morawetz on Private Corporations (2d Ed.) § 549; Tex. & St. L. R. Co. v. Robards, 60 Tex. 545, 45 Am. Rep. 268; W. M. W. & N. W. Ry. Co. v. Granger, 86 Tex. 350, 24 S. W. 795, 40 Am. St. Rep. 837.

It follows that the court, under the evidence, could have properly instructed the jury to find for appellee, and hence that the objections to the admission of evidence and to the court's action in giving and refusing charges, on the ground that authority in J. W. Moore to execute the note sued upon had not been shown, are all immaterial.

The judgment is therefore affirmed.

### On Motion for Rehearing.

[2] We were, perhaps, not literally correct in stating in our original opinion that "no meeting of the stockholders was ever thereafter had, save that they appointed J. W. Moore as general manager with full authority as by him before exercised." This is possibly misleading, in that the statement implies that there is direct evidence of a meeting of the board of directors after the incorporation of the milling company. Possibly the evidence as a whole authorizes this conclusion, but the only witness who so testified on the subject says there was no such meeting when a quorum was present. We regard this, however, as immaterial, for the evidence shows that there were meetings by the persons who were designated as directors in the charter before and at the time the charter was forwarded to the Secretary of State for approval and in which Moore was agreed upon as general manager. The evidence further shows that after the issuance of the charter Moore transacted all business for the corporation as the general manager, and under the evidence in the case it is inconceivable that the board of directors was without knowledge of his acts and of the authority he exercised. This being true, we think the corporation cannot now be heard to say that he was without authority. We think the motion for rehearing should be overruled, and it is so ordered.