Sarah E. BARTLEY et al., Appellants,

v.

Robert A. SONE, Appellee.

No. 15296.

Court of Civil Appeals of Texas,
San Antonio.

Oct. 30, 1974.

Rehearing Denied Feb. 5, 1975.

Second Rehearing Denied Oct. 1, 1975.

Morriss, Boatwright, Lewis & Davis, San Antonio, C. H. Gilmer, Rocksprings, for appellants.

Thurman Lee Mulhollan, Corpus Christi, Robert A. Sone, Leakey, for appellee.

CADENA, Justice.

This case involves the right to use water emanating from a spring and flowing in a ditch which will be referred to in this opinion as the "Waddle Ditch."

Plaintiff, Robert E. Sone, is the owner of the west ¼ of Survey 22, Block 3, Cert. %₅, T. W. G. N. Ry., in Real County. At the time the case went to trial, the east ¾ of Survey 22 was owned by defendants, Sarah E. Bartley, Marvin Conner, and Betty Perry and husband, Jim Perry. Another defendant, M. L. Hocker, was in possession, as tenant, of the east ¾ of the survey. After testimony had terminated, but before judgment was rendered, Howard E. Davis, Jr., and wife, Sarah Margaret Davis, purchased the interests of Bartley, Conner and the Perrys in the east ¾ of the survey and were permitted to intervene as defendants.

Defendants appeal from a judgment declaring that plaintiff had the unlimited and unrestricted right to use the water flowing in the Waddle Ditch "for any purpose he may desire" and limiting the defendants to the right to use only such water as may be available "at the end of the" Waddle Ditch after the "unrestricted and unlimited use" of such water by plaintiff. The judgment also awarded plaintiff injunctive relief, but a description of that portion of the judgment is unnecessary, since we agree with defendants' points 21–25, unchallenged by

plaintiff, that the evidence does not warrant injunctive relief.

The west ¼ of Survey 22 will be referred to in this opinion as the "Sone property," while the east ¾ of the survey, owned by defendants, will be designated as the "Bartley property." At times, in the testimony, the exhibits and the briefs, Survey 22 is referred to as "Section 22," but, whichever term is used, the reference is to the land involved in this litigation.

Several springs are located on the Sone property. Prior to May 11, 1894, the water from these springs flowed in a general southerly direction across the Sone property and into Bull Head Creek, a tributary of the Nueces River, at a point on the Sone property. At no time did any of the water from the springs flow onto or across any portion of the Bartley property. One of these springs is the source of the water which flows in the Waddle Ditch. (Findings of Fact 19, 20 and 21).

On September 1, 1894, Phil Waddle, one of plaintiff's predecessors in title, executed an affidavit of appropriation of the water from the springs. (Findings of Fact 4 and 13). Although this affidavit was filed with the county clerk, the record does not disclose the date of such filing. (Finding of Fact No. 5).

It is undisputed that on May 11, 1894, Phil Waddle commenced construction of three irrigation ditches for the purpose of capturing the water emanating from the springs and transporting it for use on other portions of the Sone property. The September 1, 1894, Waddle affidavit recited the completion of these three ditches and described their location. One of these ditches is the one referred to in this opinion as the Waddle Ditch. This ditch ran in a general easterly direction from its point of origin at the spring, across the Sone property, and terminated at the eastern boundary of such property, which is also the western boundary of the Bartley property. (Findings of Fact 16, 17, and 24).

On May 12, 1894, one day after commencement of construction of the Waddle Ditch, J. E. T. Burris, one of defendants' predecessors in title (Finding of Fact No. 14), began construction of an irrigation ditch which will be designated in this opinion as the "Burris Ditch." This ditch connected with the Waddle Ditch at the point where the latter ditch terminated on the eastern boundary of the Sone property and the western boundary of the Bartley property. (Finding of Fact No. 24). On November 30, 1894, Burris filed his affidavit of appropriation with the County Clerk. (Finding of Fact No. 11). This affidavit contained the following language: "Said ditch is supplied by water from the Waddle . . . Ditch . . . and this description is made to obtain the right to said waters next after Mr. P. Waddle." (Finding of Fact No. 12).

The Waddle and Burris affidavits of 1894 were filed in compliance with the provisions of Tex.Gen.Laws 1889, ch. 88, p. 100, the statute then in force. Under this statute, a person who had constructed works for the appropriation of water subject to appropriation was directed to file an affidavit with the County Clerk containing details of the ditch or canal. Under the provisions of § 8 of this statute, upon the filing of the affidavit the rights of the appropriator "related back" to the date of commencement of construction of the ditch or canal. Under this provision, Waddle's rights had their inception on May 11, 1894, the date he commenced construction of the Waddle Ditch, while the rights of Burris came into being on May 12, 1894, the date of commencement of construction of the Burris Ditch.

In 1913 the legislature created the Board of Water Engineers and made significant changes in the statutory law concerning the appropriation of public waters. Tex.Gen. Laws 1913, ch. 171, p. 358. Among other things, the 1913 statute directed that, within one year after the effective date of the statute, appropriators of water file with the Board of Water Engineers certified copies of the sworn statements of appropriation

previously filed with the county clerk under prior statutes. In 1915 the period for filing of such certified copies was extended until March 31, 1916. The filing of the certified copy of a prior affidavit of appropriation is generally referred to as a "certified filing," or, simply "CF."

Prior to March 16, 1916, Waddle conveyed the Sone property to I. I. Hutcherson, while Burris conveyed the Bartley property to T. R. Moore. Both Hutcherson and Moore filed with the Board of Water Engineers certified copies of the affidavits of appropriation filed with the county clerk in 1894 by Waddle, in the case of Hutcherson, and by Burris, in the case of Moore. The file marks on these instruments reflect that they were both filed at 2:00 P.M. on March 16, 1916. The Moore certified filing appears on page 302 of Book 5 of the water appropriation records of the Board of Water Engineers and bears the file number 884, while the Hutcherson certified filing appears on page 384 of Book 5 and bears the number 885.

CF 885 filed by plaintiff's predecessor in title, Hutcherson, is accompanied by Hutcherson's affidavit which recites: (1) At the time Waddle filed his affidavit of appropriation in 1894, the Waddle Ditch had been completed and was in actual use. (2) From 1894 to the date of filing of CF 885, "all the water that has been needed has been used, which has take [sic] the total capacity of the ditch, except in very wet years when not quite all has been used." (3) The water was used to irrigate "about (25) twenty-five acres of land out of the W. ½ N. E. ¼ of Section 22, . . . said land being owned by me due course of transfer from Phil Waddell [sic]." (Emphasis added. The description of the land being irrigated as being located in the "N. E. ¼" of the survey does not describe any land ever owned by plaintiff or his predecessors in title, including Waddle and Hutcherson. The N. E. ¼ of the survey has, at all times relevant to this controversy, been owned by defendants and their predecessors in title. However, as required by the 1913 statute, CF 885 in-

cludes the 1894 Waddle affidavit of appropriation which correctly describes the Waddle Ditch as being located wholly on the Sone property, and the statement in CF 885 that the land being irrigated by Hutcherson was owned by Hutcherson "by due course of transfer" from Phil Waddle necessarily refers to the Sone property, which is the property transferred by Waddle to Hutcherson prior to the filing of CF 885.)

CF 884 filed by Moore, defendants' predecessor in title, after describing the Burris Ditch, declares: (1) The water from the Burris Ditch which was used for irrigation purposes, was the "surplas [sic] water that is not used by I. I. Hutcherson, who owns the upper end of said ditch." (It is clear that the words "the upper end of said ditch" which CF 884 describes as being owned by Hutcherson, refers to the Waddle Ditch, and not to the "upper end" of the Burris Ditch.) (2) Since 1894 the water flowing in the Burris Ditch consisted of "all the water that has come down said ditch as surplas [sic], not used by I. I. Hutcherson." (3) The water was used to irrigate "about 13½ acres" of the Bartley property.

Plaintiff's predecessors in title filed with the Board of Water Engineers reports concerning the use of water from the Waddle Ditch on the Sone property in 1919, 1949, 1950, 1951, 1952, 1953 and 1954. The trial court's finding of fact No. 8 states that one of plaintiff's predecessors in title filed a report for the year 1929, but we agree with defendants' contention, embodied in the point of error No. 9, that there is no evidence to support this finding. This error, however, is harmless. In any event, we attach no significance to these reports, since they are of no assistance in determining the amount of water used on the Sone property during the years covered by the reports.

■ Plaintiff acquired title to, and went into possession of, the Sone property in 1955, since which time, according to the ninth finding of fact, he has filed yearly water reports. Defendants contend that there is no evidence to support this finding,

but since plaintiff testified that he had filed such reports every year, defendants' tenth point of error is without merit. However, only the report filed by plaintiff for 1955, the year he went into possession, was introduced in evidence. This report recites: (1) Plaintiff had no means of measuring the water used, but he had not used all the water from the spring. (2) Since plaintiff had not taken possession until May, 1955, he had used hardly any water, but he was preparing the land for cultivation. (3) The water in the Waddle Ditch ran onto the property of "another" who "uses the excess by permission only."

Defendants and their predecessors in title filed water reports for the years 1919, 1926, 1927, 1929 and 1953–1960. The 1919 report, filed by Moore, states that the water used by him was "wast [sic] water" from the Waddle Ditch, and added that the water available to him was insufficient since, because of drought, Hutcherson used "nearly all" the water. The 1926 report reflects the use of 141,200 cubic feet of water to irrigate 13 acres, while the 1927 report states that 12,800 cubic feet were used on 13 acres. It is impossible to determine from the 1929 report whether the amount of water used on the Bartley property was 175,040 cubic feet or 175,040 cubic feet.

The reports filed for the years 1953–1960 make no attempt to estimate the amount of water used during those years. The number of acres being irrigated, according to these reports, varied from eight acres in 1958 to 35 acres in 1959 and 1960. The 1958 report recites that there was "plenty of water" and that the Bartley property was irrigated "all the time except when there was sufficient rainfall." The 1960 report declares that the Burris Ditch "runs all the time."

In addition to the findings of fact identified by number in the preceding portions of this opinion, the trial court found that during the existence of the Waddle Ditch plaintiff and his predecessors in title had used the water in such ditch "as they saw fit" (finding No. 26); from time to time the persons owning or in possession of the Bartley property had gone upon the Sone property for the purpose of cleaning and repairing the Waddle Ditch, but, except during the period beginning on May 5, 1965, and June 10, 1965, the date on which plaintiff filed this suit, such entry and work "was done with the permission of the then owners of" the Sone property (finding No. 27); when, during the May 5, 1965–June 10, 1965 period, Bartley and his tenant attempted to exercise control of the Waddle Ditch, plaintiff, Sone, "informed them that they had no legal right to clean or repair" such ditch (finding No. 29. There is no finding numbered 28); the water in the Burris Ditch has been the only water available for irrigation and domestic purposes on the Bartley property (finding No. 30); and at times plaintiff and his predecessors in title "had used all the water in the Waddle Ditch, leaving no water for the Burris Ditch" (finding No. 31).

We agree that, as contended by defendants, there is no evidence to support the finding (No. 26) that, "during the entire existence of the Waddle Ditch," plaintiff and his predecessors in title had used the water in that ditch "as they saw fit," and that there is no evidence to support the finding (No. 31) that plaintiff and his predecessors in title had, at times, "used all the water in the Waddle Ditch, leaving no water for the Burris Ditch."

Plaintiff's claim of ownership of all the water flowing in the Waddle Ditch is based on (1) excavation and capture of percolating waters and bringing them to the surface; (2) the Waddle affidavit of appropriation filed in 1894 and the certified filing (CF 885) by Hutcherson in 1916; ownership of the water emanating from the springs by reason of the fact that the springs are located on plaintiff's land.

Defendants rely on the Burris affidavit of appropriation filed in 1894 and the certified filing by Moore (CF 884) in 1916.

■ The record does not support plaintiff's claim of ownership of the water on

the theory that he acquired title to it as a result of excavation and capture of percolating waters by bringing them to the surface. In any event, the trial court made no findings of fact relating to this theory and plaintiff made no request for additional findings. Since no element of this ground of recovery was found by the trial court, we must consider this ground of recovery as waived. Tex.R.Civ.P. 299; 4 McDonald, Texas Civil Practice § 16.09, p. 25 (1971).

Nor can the trial court's conclusion that plaintiff is entitled to use all of the water in the Waddle Ditch be supported on the basis of compliance with applicable statutes.

■ It has always been the law in Texas that as between appropriators of water, the first in time is the first in right. Hutchins, Texas Law of Water Rights 228 (1961). Because of the doctrine of relation back, the claim of Waddle, perfected by his filing of the 1894 affidavit, was first in time, and, therefore, the Waddle claim is superior to the rights acquired by Burris. However, under the express provisions of the 1889 statute, Waddle, by filing the affidavit, obtained only the prior right "to such quantity of the water only as is reasonably sufficient and necessary to irrigate the land susceptible of irrigation on either side of ditch or canal." Tex.Gen.Laws 1889, ch. 88, p. 100, § 4. There is nothing in the record to indicate that the amount of water reasonably sufficient and necessary to irrigate the Sone property was equal to the entire output of the spring. Even if we should assume that at times the entire flow from the spring was reasonably necessary for the proper irrigation of the Sone property, the record does not indicate the volume of flow from the spring during those years. It may be true that during drought years the prior appropriator has the right to use all the water if the use of such amount is reasonably necessary, even if his exercise of such right completely deprives subsequent appropriators of water. But the fact that, during dry years, the need of the prior appropriator demands the use of all the water does not give such appropriator the right to use all of the water at all times. His right remains the right to use such amount of water as is reasonably necessary. This is the only right acquired by Waddle under the 1889 statute.

■ We find no basis for holding that the filing of CF 885 by Hutcherson in 1916 in any way enlarged or increased the right which was acquired by Waddle in 1894 and which passed to Hutcherson when he acquired the Sone property from Waddle. It is, we think, clear that the provisions in the 1913 statute relating to the filing of certified copies of prior appropriation affidavits were intended to establish a central filing agency, the Board of Water Engineers, where all records relating to appropriations of water could be kept. The filing of the certified copies of prior affidavits of appropriation was not intended to increase the rights acquired by the prior filings with county clerks. The legislature, in § 98 of the 1913 legislation, expressly disavowed any intention "to alter, affect, impair, increase, destroy, validate or invalidate any existing or vested right . . . ."

Therefore, assuming that the water flowing from the spring was water which was subject to appropriation by compliance with applicable appropriation statutes, neither Waddle nor his successors in title acquired the right to use all of the water flowing from the spring as they saw fit. The judgment of the trial court, then, cannot rest on the Waddle affidavit of 1894 and the 1916 filing of a certified copy of such affidavit by Hutcherson.

■ However, the judgment of the trial court can be upheld on the theory that plaintiff owns all of the water in the Waddle Ditch because such water comes from a spring or springs located wholly on plaintiff's land.

■ The owner of land "owns also all ordinary springs and waters arising thereon." *Toyaho Creek Irrigation Co. v. Hutchins*, 21 Tex.Civ.App. 274, 52 S.W. 101, 105

(Fort Worth 1899, writ ref'd). This rule relating to ownership of water flowing from springs stems from the rule that the owner of land owns the water under the surface, generally referred to by hydrologists as "ground water." Our statutory law recognizes this principle, although the legislature uses the term "underground water," rather than "ground water." Our statutes define "underground water" as "water percolating below the surface of the earth and that is suitable for agricultural gardening, domestic or stock raising purposes, but does not include defined subterranean streams or the underflow of rivers." Tex.Water Code Ann. § 52.001(3) (1972). The Water Code expressly recognizes "the ownership and rights of the owner of the land . . . in underground water . . . ." Tex. Water Code Ann. § 52.002 (1972). These statutory provisions are but the embodiment of well settled rules relating to the ownership of percolating waters. *Houston & T. C. Ry. v. East,* 98 Tex. 146, 81 S.W. 279 (1904); Anno.: 55 A.L.R. 1385, 1390–95 (1928).

■■■ The rules referred to in the two preceding paragraphs are not applicable to water flowing in a subterranean stream or to the overflow of rivers. Nor are such rules applicable to springs which form the source of a flowing stream or which add perceptibly to the flow of water in a stream. However, in the absence of evidence that the flow of the spring in question had its source in a subterranean stream, or was of sufficient magnitude to be of any value to riparian proprietors, or was the source of, or added perceptibly to the flow of, a stream, it will be presumed that the spring was of such character that plaintiff "had the right . . . to . . the use of their waters for any purpose, either on riparian or non-riparian land." *Texas Co. v. Burkett,* 117 Tex. 16, 296 S.W. 273, 278 (1927). That is, it must be concluded that the springs "were the exclusive property of" plaintiff, "who had all the rights incident to them that one might have as to any other species of property." *Id.*

Defendants argue that the trial court made no findings concerning the nature of the springs and the source of the water flowing from such springs, and that therefore plaintiff, who failed to request that the trial court make additional findings, waived his right to recover on this theory. We disagree.

■■■ Plaintiff specifically pleaded that the springs were located wholly on his land, and the trial court expressly so found. Under the doctrine applied in *Burkett,* in the absence of evidence to the contrary, it must be presumed that the springs were of such character that plaintiff had the right to use their waters for any purpose. If the existence of fact "A" gives rise to a presumption of fact "B", then, when the existence of "A" is established, the law requires that the existence of "B" be assumed in the absence of evidence which would support a finding of the non-existence of "B." *Johnson's Adm'r v. Timmons,* 50 Tex. 521 (1878); Model Code of Evidence rule 104.1 (1942). It is clear that the doctrine applied in *Burkett* gives rise to a true presumption, which is a rule of law which *compels* the trier of fact to draw a certain conclusion from a given fact or group of facts in the absence of evidence rebutting such conclusion. 9 Wigmore, Evidence § 2491, at 289 (3d ed. 1940); Keeton, Statutory Presumptions— Their Constitutionality and Legal Effect, 10 Tex.L.Rev. 34 (1932); Chafee, the Progress of the Law, 1919–1921: Evidence, 35 Harv. L.Rev. 302 (1922).

■■■ If the existence of "A" requires and compels a finding of the existence of "B" in the absence of evidence to the contrary, it is clear that, in the absence of such rebutting evidence, the existence of "B" is established as a matter of law. Findings upon facts which are established as a matter of law are not required. *Smith. v. Brown Express,* 343 S.W.2d 550 (Tex.Civ. App.—San Antonio 1961, writ ref'd n. r. e.); *Burmley v. Neeley,* 207 S.W.2d 931 (Tex. Civ.App.—Amarillo 1947, writ ref'd n. r. e.).

Plaintiff's claim to exclusive ownership of the water because the springs are located wholly on his land is established without resort to the doctrine of implied findings.

Defendants present several points based on alleged defects in CF 885, filed by Hutcherson in 1916. These contentions are without merit, in view of our conclusion that plaintiff was the exclusive owner of the water flowing from the springs and that his rights do not depend on compliance with the statutes concerning appropriation.

The judgment of the trial court is reformed by deleting from such judgment all portions granting plaintiff's prayer for injunctive relief. As so reformed, the judgment of the trial court is affirmed. Plaintiff (appellee) shall pay ⅕ of the costs of this appeal. The remaining ⅘ of such costs are assessed against defendants (appellants).