**A.H. DENIS, III, et al., Appellants,**

v.

**KICKAPOO LAND COMPANY, et al., Appellees.**

No. 3–88–150–CV.

Court of Appeals of Texas, Austin.

May 24, 1989.

Rehearing Denied June 21, 1989.

P.B. Shannon, Shannon, Porter & Johnson, San Angelo, for appellants.

Eric G. Behrens, Graves, Dougherty, Hearon & Moody, Austin, for appellees.

Before SHANNON, C.J., and CARROLL and ABOUSSIE, JJ.

SHANNON, Chief Justice.

Appellants, A.H. Denis, III, and others, sought a declaration from the district court of Concho County that appellee, John R. Matthews, Jr., had no authority to appropriate waters from Kickapoo Springs for irrigation purposes without permission from the State. After hearing, the district

court rendered summary judgment that appellants take nothing. This Court will affirm the judgment.

Kickapoo Springs is situated on the Matthews ranch. Although the Springs are not the headwaters of Kickapoo Creek, the Springs are the principal source of water for the Creek. After passing through the Matthews ranch, the Creek continues onto appellants' ranch. Appellants' livestock depend on the Creek for water.

In 1983 Matthews began withdrawing water from Kickapoo Creek and irrigating nearby cropland. In connection with the irrigation project, Matthews drilled into the earth and stone adjacent to Kickapoo Springs. He placed a suction pipe through the excavation into the underground spring waters. The suction pipe captures water before it reaches the surface. In such manner, water is taken from the Springs at the rate of seven to eight hundred gallons each minute. The exact amount of water taken from the Springs is measured by a metering device connected to the pipe. After being captured and measured, the water is channelled into Kickapoo Creek. More than a mile downstream, Matthews withdraws a similar amount of water from the Creek for irrigation purposes.[1]

Appellants pleaded that Matthews's use of the Spring waters greatly reduced the amount of water in Kickapoo Creek. Appellants alleged further that Matthews's appropriation was an unlawful use of state waters in violation of Tex. Water Code Ann. § 11.081(a) (1988) and in derogation of their riparian rights.

Matthews filed a motion for summary judgment asserting that the water from Kickapoo Springs is percolating groundwater and that he, as landowner, has the absolute right to make whatever use he chooses of such water. Appellants resisted summary judgment upon two grounds: (1)

Kickapoo Springs water is not percolating water; and (2) the water is state-owned because it contributes perceptibly to the flow of Kickapoo Creek and benefits downstream riparian owners.

In 1904, the Supreme Court specifically adopted the "English" rule for percolating groundwater. *Houston T.C. Ry. Co. v. East*, 98 Tex. 146, 81 S.W. 279 (1904). Pursuant to this rule, groundwater percolating beneath the soil is the property of the owner of the surface who may, in the absence of malice, appropriate such water while on his premises and make whatever use of it as he pleases, *City of Corpus Christi v. City of Pleasanton*, 154 Tex. 289, 276 S.W.2d 798 (1955)[2], even though his use cuts off the flow of such water to adjoining land. Although the rule has been criticized, *see* Greenhill and Gee, *Ownership of Groundwater in Texas; The East Case Revisited*, 33 Tex.L.Rev. 629 (1955), the Supreme Court reaffirmed the English rule as recently as 1983, *City of Sherman v. Public Utility Commission*, 643 S.W.2d 681 (Tex.1983).

A spring is water flowing out of the ground by natural forces at a particular place. C. Kinney, A Treatise on the Law of Irrigation and Water Rights § 1195 at 2167 (2nd ed. 1912). Under the English common law, percolating waters supplying a natural spring were treated as a part of the soil where found and belonged absolutely to the surface owner. *Id.* § 1196 at 2167–2168. On the other hand, if the water supplying the spring flows to the outlet of the spring in a well-defined and known subterranean channel, such water is regarded as surface water. *Id.* § 1195 at 2167. For such water to qualify as surface water, the subterranean water course must have all of the characteristics of surface water courses, such as beds, banks forming

---

1. There is no contention that Matthews extracts more water from the Creek than he captures from the Springs.

2. In contrast, under the so-called "American" rule, only "diffused percolating groundwater" is subject to absolute ownership by the landowner. Diffused percolating water is water not tributary to any stream or other body of water,

either surface or subterranean. The landowner's rights in percolating water, other than diffused, are correlative and are governed by rules analogous to those governing riparian rights in surface streams. *See Katz v. Walkinshaw*, 141 Cal. 116, 70 P. 663, *aff'd on rehearing*, 141 Cal. 116, 74 P. 766 (Cal.1903).

a channel, and a current of water. *Id.* § 1155 at 2099. In Texas, the presumption is that subterranean water is percolating water. *Texas Co. v. Burkett*, 117 Tex. 16, 296 S.W. 273, 278 (Tex.1927).

The Texas Water Code adopted the English rule by acknowledging the surface owner's rights in "underground water." Tex. Water Code Ann. § 52.002 (Supp. 1989). Underground water is defined as:

water percolating below the surface of the earth and that is suitable for agricultural, gardening, domestic, or stock raising purposes, but does not include defined subterranean streams or the underflow of rivers.

*Id.* § 52.001(4) (Supp.1989). Where underground water flows in a defined subterranean stream, the water is not protected by § 52.001(4) as "underground water" and is therefore "state water."

Matthews moved for summary judgment on the basis that the water which supplied Kickapoo Springs is percolating groundwater. He supported the summary judgment motion by the affidavit of his hydrologist, Robert S. Kier. Kier concluded:

Based on my studies, on-site inspections, and measurements, it is my expert opinion that the source for Kickapoo Spring is ordinary percolating groundwater. Although the discharge at Kickapoo Spring may issue from discrete orifices, the configuration of the water table and the well spacing indicate that groundwater flow is not confined to underground streams with definite channels, but is diffuse. Based on my examinations of Kickapoo Creek, Kickapoo Spring, and the water table map for those sites, it is impossible that the base discharge from Kickapoo Spring or any portion of it constitutes underflow of a stream as defined by the Texas Department of Water Resources.

Recognizing the English rule, *Houston T.C. Ry. Co. v. East, supra,* appellants assert that, indeed, the water of Kickapoo Springs flows in a defined subterranean stream, and as such is "state" water subject to state control. To support this position, appellants filed the affidavit of their hydrologist, A. Joseph Reed. The pertinent parts of Reed's affidavit are as follows:

Based upon a careful evaluation of these data, it is my expert opinion that the water being produced by the well installed by the defendant at Kickapoo Spring is State or surface water. This opinion is base [sic] upon several facts. First of all, I believe that the source of water for Kickapoo Spring is percolating ground water. The ground water is moving down the hydraulic gradient toward Kickapoo Spring through various secondary solution cavities and vuggy porosity. However, the well which was drilled at the spring was started about thirteen feet back from the rock wall from which the spring emerges and was deliberately drilled at an angle toward a major discharge orifice of the spring. It was reported to me by [Matthews] that the well encountered and was terminated in a cavity. The bottom of the well was reported to me by [Matthews] to be about 1½ to 2 feet below the water encountered and the bottom of the well is reported to be perhaps seven feet from the rock wall from which the spring emerges.

\* \* \* \* \* \*

It appears, from the description by [Matthews] to me, that the well terminated in a cavity and that the well pump merely diverts spring flow through the pump and does not add to or augment the spring flow. It appears that the well has penetrated the orifice of the spring, that point where the percolating ground water has accumulated in a cavity thence to issue into the drainage channel. *This collection point of the percolating ground water into a central cavity, or well-defined subterranean channel, comprises an orifice of the spring which would in my expert opinion, be the point at which the percolating ground water ceases to be ground water but becomes State or surface water.* This then provides the basis for my determination that the water produced from the well is State or surface water. [Emphasis added].

Reed concluded that the source of water for Kickapoo Springs is percolating water.

According to Reed, the percolating water accumulates in a cavity before it flows to the surface. Matthews withdraws water from this cavity. Appellants urge that this cavity constitutes the well-defined subterranean channel that causes the water to be classified as surface water.

This Court does not agree. Appellants have failed to demonstrate that the water supplying Kickapoo Springs flowed through a subterranean water course possessing all of the characteristics of a surface water course, such as a bed, banks forming a channel, and a current of water.[3] C. Kinney, A Treatise on the Law of Irrigation and Water Rights § 1155 at 2099. In the absence of such proof, the district court properly relied upon the summary judgment proof that the source for Kickapoo Springs is percolating groundwater. The court's summary judgment is also supported by the presumption that groundwater is percolating water. *Texas Co. v. Burkett*, 296 S.W. at 278.

■ Appellants also argue that because the Kickapoo Springs water contributes perceptibly to the flow of Kickapoo Creek and benefits downstream riparian owners, it is state water and its use is governed by surface water law. As authority, appellants rely upon *Texas Co. v. Burkett, supra*, and *Bartley v. Sone*, 527 S.W.2d 754 (Tex.Civ.App.1974, no writ). Because the San Antonio Court in *Bartley* relied upon language in *Burkett*, it is sufficient to examine *Burkett*. In *Burkett* the plaintiff owned land adjacent to the Leon River. There were at least four sources of water on the plaintiff's land, including springs fed by percolating water. Plaintiff sold his water rights to the Texas Company. When the Texas Company failed to pay on the contract, Burkett filed suit. In its defense, the Texas Company asserted that these waters were state property which the plaintiff had no right to sell. With respect to the percolating water, the Supreme Court determined that there is a "presumption that the sources of water supply obtained

by ... excavations are ordinary percolating waters, which are the exclusive property of the owner of the surface of the soil...." *Texas Co. v. Burkett*, 296 S.W. at 278. The Court applied the presumption and concluded that because the Texas Company had not shown that the springs had their source in underground streams, the plaintiff was deemed to be the absolute owner of all such waters which he could "barter or [sell] as any other species of property."

It is true that the Court in *Burkett* observed:

> We are unable to say, from the evidence, whether or not the spring, or springs, from these percolating waters, was, or were, of sufficient magnitude to be of any value to riparian proprietors, or added perceptibly to the general volume of water in the bed of the stream, and we therefore assume that they were springs of such character that Burkett plainly had the right to grant access to them and the use of their waters for any purpose....

*Id.* The Court seemed thereby to imply that if percolating waters did contribute to a surface water course, then the English rule of absolute ownership might not apply. It is plain, however, that the Court's statement is *obiter dicta* and not a holding. More important, the Court's dicta is not Texas law because it is, in effect, a statement similar to the American rule on percolating groundwater, rather than the English rule. When squarely faced with the issue, the Supreme Court has consistently adhered to the English rule. *East, supra; City of Sherman v. Public Utility Commission, supra.*

Kinney states the English rule concerning percolating waters tributary to springs as follows:

> Under the English rule of the common law, percolating waters tributary to springs were treated the same as all other percolating waters as a part of the soil where found and belonged absolutely to the owner thereof, who could do what

---

**3.** That water collects in the cavity does not demonstrate a current exists. Unlike percolating water which may seep in from many directions, current is a flow of water in a discernible direction.

he pleased with them, even though in abstracting the water it dried up the springs, to which the water was tributary, on the land of another. And it is immaterial that the springs so supplied with water were the sources of a stream or surface water course upon which riparian rights had vested, provided that the water was intercepted while it was still percolating through the soil before it had reached the surface of the ground at the springs.

§ 1196 at 2167. It is uncontested that Matthews intercepts the water before it reaches the surface. Appellants' points of error are overruled.

The summary judgment is affirmed.