Houston & Texas Central Railroad Company v. W. A. East.

No. 1333.  Decided June 13, 1904.

**1.—Use of Percolating Water—Draining Neighboring Well.**

The owner of the soil has the right to collect by wells and to use, without limitation of amount or use to which it is put, the waters percolating or flowing beneath the surface, though he drains, thereby, the well of a neighboring proprietor to his damage. (Pp. 149-151.)

**2.—Same—Use by Railway.**

A railway company which collected in its well and used for supplying its engines waters percolating beneath the soil, to the extent of 25,000 gallons per day, thereby draining the well of a neighboring proprietor, was not liable for the damage; it was damnum absque injuria, defendant's right not being subject to limitation to reasonable amount or use for domestic purposes. (Pp. 147-151.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Grayson County.

East sued the railway company and judgment went for defendant. East appealed and the judgment was reversed and rendered in his favor on the findings of fact made by the trial court. The defendant company then obtained writ of error from the Supreme Court.

*Baker, Botts, Baker & Lovett* and *Head & Dillard,* for plaintiff in error.—The trial court having found that defendant's well was upon land owned by it in fee simple, and was dug to supply water for the use of its locomotives and machine shops operated by it in the city of Denison, in which said land is situated, and without any intention of injuring the property of the plaintiff or knowledge that it would have such effect, and that the water in said well was supplied by percolation through the soil and did not come from any defined stream, no other judgment than the one rendered should have been rendered by the court below. The law is that the owner of land can use all the water he can obtain thereon by digging wells which are supplied by water percolating through the soil, provided said wells are not dug for the purpose of maliciously injuring adjoining proprietors, and this though such adjoining proprietors may be entirely deprived of water which otherwise would have percolated into their own land. Saddler v. Lee, 66 Ga., 45; Lybe's appeal, 106 Pa. St., 626-634; Collins v. Gas Co., 131 Pa. St., 156; Metcalf v. Nelson, 59 Am. St. Rep., 746, and note; Southern Pac. Ry. Co. v. Dufour, 19 Law. Rep. Ann., 92, and full note; Gould on Waters, 3 ed., sec. 280; Miller v. Blackrock Springs Imp. Co., 40 S. E. Rep., 27; 27 Am. and Eng. Enc. of Law, 1 ed., 424, 425; Hougan v. Milwaukee St. Ry. Co., 35 Iowa, 558; Acton v. Blundell, 12 M. & W., 324; Burroughs v. Saterlee, 67 Iowa, 396; Hanson v. McCue, 42 Cal., 303; Hale v. McLea, 53 Cal., 578.

We wish to especially direct the attention of the court to the able review of the authorities contained in the recent case of Miller v. Black-

rock Springs Imp. Co., 40 S. E. Rep., 27, referred to with disapproval by the honorable Court of Civil Appeals. We also desire to direct the attention of the court to the case of Hougan v. Railway Co.. 35 Iowa, 558, on account of its application of the views here contended for to facts strikingly like those involved in this case. We also especially invite an examination of the latest edition of Gould on Waters, cited in our brief, and to 2 Lewis on Em. Dom., sec. 584, where the Iowa case is cited with approval. Also see 27 Am. and Eng. Enc. of Law, 1 ed., 424, 425.

*Perry Morris* and *Moseley & Eppstein,* for defendant in error.—The defendant had the right to use its land in any way in which it saw fit, subject only to the qualification that it must so use it as not to injure the property of another. Adjoining proprietors of land have correlative rights in all underground percolating waters, and though each of them may use the water under his own land, his right to do so is subject to the rule that his use of same must be reasonable, under all of the circumstances, and if in the unreasonable use of such percolating waters he destroys his neighbor's supply, he is liable in damages. The defendant had the right to dig wells upon its land and take therefrom all the water that it needed in order to obtain the fullest enjoyment and usefulness of its land as land, either for purposes of pleasure, abode, productiveness of soil, trade, manufacture, or for whatever else the land as land might serve, but it could not unreasonably use it to the injury of others. Plaintiff has the right to prevent the unreasonable use by defendant of its land, when such unreasonable use abstracts the natural and usual supply of water to which it is entitled from his land, provided defendant's use of its property is not such as the said land could be reasonably used for as land. And a fortiori can plaintiff recover damages for such inpury. Defendant having destroyed plaintiff's well by extracting therefrom its natural supply of water, by digging wells upon its own land and extracting therefrom an unreasonable quantity of water, more than its land as land was entitled to, which said unreasonable use caused the injury complained of by plaintiff, is liable to the plaintiff for the amount of his damages, to wit. $206.25. Forbell v. City of New York, 164 N. Y., 522, 51 Law. Rep. Ann., 695; Smith v. Brooklyn, 160 N. Y., 357, 45 Law. Rep. Ann., 664; Swett v. Cutts, 50 N. H., 439; Bassett v. Salisbury, 43 N. H., 569; Gould on Waters, sec. 280; Angell on Water Courses, sec. 109; 93 N. W. Rep., 907.

WILLIAMS, Associate Justice.—This case is thus stated by the Court of Civil Appeals:

"This is a suit by W. A. East against the Houston and Texas Central Railroad Company for damages growing out of the alleged destruction by defendant of plaintiff's well. The case was tried before the court without a jury and resulted in a judgment for defendant and plaintiff appealed. The trial court filed conclusions of fact which, in the absence

of a statement of facts, are to be taken as the facts of the case. Said conclusions are as follows:

" '1. The defendant, the Houston & Texas Central Railroad Company, was the owner in fee simple of six (6) lots in the city of Denison, Grayson County, Texas, at the time mentioned in plaintiff's petition, and dug thereon a well twenty (20) feet in diameter and sixty-six (66) feet deep. It put therein a steam pump of sufficient strength to supply a three-inch pipe, and with the exception of three or four days since August, 1901, has daily taken from said well by means of said pump about twenty-five thousand (25,000) gallons of water. This water was taken from said well and used by it in its locomotives and machine shops operated by it in the city of Denison, in which said land is situated. Said well is supplied entirely by water percolating through its soil and that of adjacent lands and not by any underground or other stream of any kind. Before digging said well defendant made an examination of its surroundings, including the well of the plaintiff, and made test holes with a view of obtaining the desired supply of fifty thousand (50,000) gallons of water per day. Plaintiff was present when such examinations were being made and consented for his well to be examined by defendant, and had no further conversation or communication with the defendant upon the subject. From the examination made by it defendant became satisfied that it could procure the desired supply of water upon the land as aforesaid, and dug said well for purposes of obtaining the same for the uses hereinbefore set out. The wells were dug without any intention on the part of defendant of injuring the property of either of the plaintiffs, and it did not know that such would be the effect. The water percolated into defendant's well at different depths, some of it coming into the bottom thereof. The well of plaintiff is about five feet in diameter and about thirty-three feet in depth; is on land owned by plaintiff in fee simple and used as a homestead by plaintiff; was dug prior to defendant's well; and had always been used by plaintiff, up to the time defendant's well was dug, for household purposes, and prior to that time had always supplied an adequate supply of water for such uses; that this well has been dried up by the digging and use to which defendant has put its well. That the damage that plaintiff and his land has sustained by the drying up of his well is the sum of two hundred and six dollars and twenty-five cents ($206.25), including both past and prospective injury to himself and the lots described in his petition.

" '2. I further find that the use to which defendant puts its well was not a reasonable use of their property as land, but was an artificial use of their property, and if the doctrine of reasonable use, as applicable to defined streams to such cases, this was unreasonable.' "

The Court of Civil Appeals reversed the judgment of the District Court in favor of the defendant and rendered judgment for plaintiff for the damages claimed. We are of the opinion that this judgment is wrong and that of the District Court right.

Since the decision in the case of Acton v. Blundell, 12 Mees. & W., 324, the law as therein laid down, so far as it controls this case, has been recognized and followed in the courts of England, and probably by all the courts of last resort in this country before which the question has come, except the Supreme Court of New Hampshire. Bassett v. Salisbury Mfg. Co., 43 N. H., 569; Swett v. Cutts, 50 N. H., 439. That doctrine is thus stated: "That the person who owns the surface may dig therein, and apply all that is there found to his own purposes at his free will and pleasure; and that if, in the exercise of such right, he intercepts or drains off the water collected from the underground springs in his neighbor's well, this inconvenience to his neighbor falls within the description of damnum absque injuria, which can not become the ground of an action." The arguments in favor of the application to such cases of the doctrines applicable to defined streams of water were thoroughly presented at the bar in Acton v. Blundell, and the reasons for the conclusion of the court against such application were carefully stated in the opinion. In all that has been said in subsequent discussions little, if anything, has been added to the arguments of counsel and of the court in that case. Acton v. Blundell, supra; Chasemore v. Richards, 7 H. L. Cas., 364; Frazier v. Brown, 12 Ohio St., 294; Miller v. Blackrock Springs Imp. Co., 99 Va., 747.

The many other authorities on the subject are cited in the cases referred to, and so thorough has been the discussion that we feel that it would be useless to attempt any addition. The practical reasons upon which the courts base their conclusions fully meet the more theoretical view of the New Hampshire court and satisfy us of the necessity of the doctrine. Those reasons are thus summarized by the Supreme Court of Ohio in Frazier v. Brown: "In the absence of express contract and a positive authorized legislation, as between proprietors of adjoining land, the law recognizes no correlative rights in respect to underground waters percolating, oozing, or filtrating through the earth; and this mainly from considerations of public policy: (1) Because the existence, origin, movement and course of such waters, and the causes which govern and direct their movements, are so secret, occult and concealed that an attempt to administer any set of legal rules in respect to them would be involved in hopeless uncertainty, and would therefore be practically impossible. (2) Because any such recognition of correlative rights would interfere, to the material detriment of the commonwealth, with drainage of agriculture, mining, the construction of highways and railroads, with sanitary regulations, building, and the general progress of improvement in works of embellishment and utility."

The mere quantity of water taken by the owner from his land has nowhere been held to affect the question. Exhaustion resulting from excavating and pumping for mining purposes has been considered in several cases to give rise to no liability. So the authorities generally state that the use of the water for manufacturing, brewing and like pur-

poses is within the right of the owner of the soil, whatever may be its effect upon his neighbor's wells and springs.

In Chasemore v. Richards, supra, the defendant, in supplying the wants of a town, used to such an extent the water which had percolated through his land into a water course as to reduce the water in the stream and to leave the plaintiff's mill thereon without adequate power, and yet it was held that there was no liability. There is possibly a conflict which we need not undertake to resolve between this decision and those in the two New York cases stated below. But in Chasemore v. Richards, Lord Wensleydale, who alone, among several delivering opinions, expressed doubt as to the correctness of the conclusion reached, admitted the soundness of the principle laid down in Acton v. Blundell, and that the owner of the soil is at liberty to dig therein and take away the percolating water for any legitimate purpose of his own, "even though they carried on trades requiring more water (breweries for example) than would be used for domestic purposes only; it would still be for their purposes only." His doubt arose out of the fact that the defendant was not using the water for his own purposes but was selling it to others. If persons using lands in mining, manufacturing and brewing may take therefrom all the water required in the prosecution of such businesses, what reason can exist why a railroad company may not do the same thing for such purposes as those to which it applies this well? We think none can be given. In the case of Hougan v. Railway Co., 35 Iowa, 558, the doctrine was applied to a situation like that shown by the facts of this case, except that there the railway company had only the right of way over, while here it owns the fee of the land; a difference in favor of this defendant. The decision is useful in establishing the proposition that such uses of water by railway companies are legitimate and proper uses in the sense of the rule we are considering. The other question, upon which the court was more doubtful, viz., whether or not such a company, with only a right of way over the land, has the right to thus draw the water from it, is not here involved.

Besides the New Hampshire decisions, which deny the whole doctrine of the other authorities, plaintiff relies on the cases of Forbell v. New York, 51 Law. Rep. Ann., 696; Smith v. Brooklyn, 45 Law. Rep. Ann., 664, 46 N. Y. Sup., 141, and Stillwater Co. v. Farmer, 86 Minn., 59. The courts in New York, by previous decisions, had unequivocally accepted the doctrine of Acton v. Blundell in this language: "An owner of soil may divert percolating water, consume or cut it off, with impunity. It is the same as land and can not be distinguished in law from land. So the owner of land is the absolute owner of the soil and of percolating water, which is a part of and not different from the soil. No action lies against the owner for interfering with or destroying percolating or circulating water under the earth's surface." Pixley v. Clark, 35 N. Y., 520. In the two cases relied on, the courts expressly adhered to this doctrine, but considered that certain facts in the cases before them took them out of its operation. One of the facts was, the cities had

drained an immense area to supply their inhabitants with water and were "making merchandise" of it, a fact which gave rise to the doubt expressed in Chasemore v. Richards. Another was, that an artificial force was applied to draw the water from the adjoining lands, which was held to constitute a trespass; and still another, that the water of defined streams was affected by the exhaustion by the cities of their sources. The existence of these facts was expressly made the ground of the holding that the general doctrine as to taking out of one's own soil water that comes there by percolation did not apply. In the Minnesota case, the defendant made no use whatever of the water, but, for no useful purpose, drained it away and discharged it through the sewers of a town, thus taking it from plaintiff, who was supplying it to the inhabitants of the town for drinking purposes. The court recognized the soundness of the doctrine which we have stated, but held that as the defendant was making no legitimate use of the water he was properly enjoined from thus wasting it. Whether or not the courts in these cases succeeded in establishing just distinctions between them and others applying the general rule we are not called on to determine.

It is readily seen that none of them, in their facts or the principles enforced, sustain this action. The defendant here is making a reasonable and legitimate use of the water which it takes from its own land, which use is not in quality different from or in its consequence to plaintiff more injurious than many upheld in the decisions. There is no claim of malice or wanton conduct of any character, and the effect to be given to such a fact when it exists is beside the present inquiry. No reason exists why the general doctrine should not govern the case.

The judgment of the Court of Civil Appeals is therefore reversed and that of the District Court affirmed.

*Reversed and judgment of District Court affirmed.*