

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable C. B. Clark, Chairman
State Board of Water Engineers
Austin, Texas

Dear Sir:

Opinion No. O-3205
Re: Whether owners of water wells,
other than artesian, may be re-
quired to file annual reports
or statements with the Board
of Water Engineers.

We have before us for consideration your letter of
recent date in which you ask the opinion of this department
upon the following questions:

"1. Are owners of water wells, other than
artesian, required to file annual reports or state-
ments with the Board of Water Engineers under the
provisions of Article 7615, Vernon's Annotated
Civil Statutes of Texas?

"2. Can owners of water wells, other than
artesian, be required to file annual reports with
the Board of Water Engineers covering the informa-
tion required by Article 7615, V.A.C.S., under a
rule or regulation promulgated by the Board pur-
suant to the powers vested in said Board under the
provisions of Section 6 of Article 848a, Vernon's
Penal Code of Texas."

Article 7615, Vernon's Annotated Civil Statutes
reads as follows:

"Art. 7615. Detailed statement furnished

"On or before the first day of March of each
year, every person, association of persons, corpor-
ation, water improvement or irrigation district who,

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable C. S. Clark, Chairman, Page 2

during any part of the preceding calendar year,
owned or operated any artesian well for any pur-
pose other than that of domestic use, shall fur-
nish, under oath, to the Board of Water Engineers,
upon blanks to be furnished by the Board, a de-
tailed statement showing the quantity of water which
has been derived from such well, and the character
of use to which same has been applied, together
with the change in level of water table of said
well, and if used in irrigation, the acreage and
yield of each crop, together with such additional
data as the Board may require."

We are of the opinion that your first question
should be answered in the negative. By its express terms
this article applies only to the owner or operator of an
artesian well. It can be given no other interpretation.

We quote from 39 Tex. Jur. 188-189 as follows:

"The maxim Expressio unius est exclusio alterius
(the expression of one thing is exclusive of another)
is said to be a logical, sensible and sound rule of
construction; and it has been frequently applied
in the construction of statutes as well as in the
interpretation of other documents. The maxim signi-
fies that the express mention or enumeration of one
person, thing, consequence or class is tantamount
to an express exclusion of all others. And when it
is applicable, affirmative words imply a negative
of what is not affirmed, negative words imply an
affirmative of what is not negatived; and a provi-
sion limiting a thing to be done in a particular
form or manner implies that it shall not be done
otherwise."

In answer to your first question, you are respect-
fully advised that owners of water wells other than artesian
wells are not required by Article 7615, Vernon's Annotated
Civil Statutes, to file annual reports or statements with
the Board of Water Engineers.

Honorable C. S. Clark, Chairman, Page 3

Acts 1931, 42nd Legislature, Chapter 261, Sections 1 and 6 (codified as Article 848a, Vernon's Penal Code), read as follows:

"Sec. 1.  It is hereby declared to be the policy and duty of the Texas State Board of Water Engineers to make and enforce rules and regulations for the conservation, protection, preservation and distribution of all underground, subterranean and percolating waters of every kind and nature whatsoever situated within the limits of the State of Texas.

"* * *

"Sec. 6.  The Board of Water Engineers shall do all things necessary for the conservation, protection, preservation and distribution of underground, subterranean and percolating waters in this State and shall make and enforce appropriate rules and regulations therefor and the specific enumeration of special powers and duties herein shall not be construed to deny the said Board other powers and duties necessary to the carrying out of the purposes of this Act as expressed in Sections 1 and 6 hereof.  Failure for a period of more than thirty days to comply with any order of said Board issued in pursuance of the powers and duties herein created shall subject the person so violating said order to the penalties enumerated in Section 5 hereof.  (Acts 1931, 42nd Leg., p. 432, ch. 261.)"

Thus, it is seen that since 1931, it has expressly been the policy and duty of the State through the Board of Water Engineers to promulgate rules and regulations for the "conservation, protection, preservation and distribution of all underground, subterranean and percolating waters of every kind and nature." (Emphasis ours). That this statute is broad in scope, there can be no doubt.

We quote from 44 Tex. Jur. 25 as follows:

"In the absence of any evidence to the contrary, it may be presumed that water obtained by

Honorable C. S. Clark, Chairman, Page 4

excavating the earth is ordinarily percolating water."

The case of Houston & T.C.Ry.Co. v. East, 92 Tex. 147, 81 S.W. 279, establishes the common law rule of the right of capture as to underground waters in this state. Under this rule even though a well drains all the water from another well on adjacent property, the owner of the second well has no recovery; it is "damnum absque injuria." See also Judkins v. Miller, 250 S.W. 290; Texas Co. v. Giddings, 148 S.W. 1142.

Is the right of capture of underground waters subject to reasonable regulation by the State when in the interest of conservation, preservation, etc., such regulation is necessary? We are of the opinion that it is.

A clear analogy to the regulation of rights in underground waters is found in the regulation of rights in oil and gas. The rule of capture is equally applicable to oil and gas flowing beneath the surface. Gillette v. Mitchell et al, 214 S.W. 619; Prairie Oil & Gas Co. et al v. Mid-Kansas Oil & Gas Co., 254 S.W. 290; Texas Pacific Coal & Oil Co. v. Comanche Duke Oil Co., 274 S.W. 193, 298 S.W. 554; Peterson et al v. Grayce Oil Co. et al, 37 S.W. (2d) 367, 98 S.W. (2d) 781; Brown et al v. Humble Oil & Refining Co., 83 S.W. (2d) 935; General Crude Oil Co. et al v. Harris et ux, 101 S.W. (2d) 1098; Thompson et al v. Consolidated Gas Utilities Corporation, 300 U.S. 55, 81 L.Ed. 510. It is settled by the decisions of the courts of Texas that the right of capture, as applied to oil and gas, is subject to reasonable regulation.

We quote from the case of Peterson et al v. Grayce Oil Co. et al, 37 S.W. 2d 367 (Affirmed 98 S.W. 2d 781) as follows:

"* * *

"Even though it could be said that prior to the adoption of the statutes vesting in the Railroad Commission the powers therein enumerated and the adoption of Rule 40 by the commission, the common-law rule as announced in Houston & T.C.Ry.Co. v.

Honorable C. S. Clark, Chairman, Page 5


East, 98 Tex. 146, 81 S.W. 279, 66 L.R.A. 738, 107 Am. St. Rep. 620, 4 Ann. Cas. 827, would be applicable to the production of oil by a leaseholder to the same extent as the production of water from a well drilled which would exhaust the supply of an adjoining property owner, yet we believe that the enactment of those statutes and the adoption of Rule 40 by the Railroad Commission would have the effect to change that common-law rule as applicable to the production of oil and gas and that the same are valid, in that their effect is merely to protect the right of different lease or title holders in the enjoyment of their coequal rights to acquire oil from a common reservoir.

"* * *"


The Supreme Court in the case of Brown et al v. Humble Oil & Refining Co., 83 S.W. (2d) 935, had the following to say:

"* * *"


"Owing to the peculiar characteristics of oil and gas, the foregoing rule of ownership of oil and gas in place should be considered in connection with the law of capture. This rule gives the right to produce all of the oil and gas that will flow out of the well on one's land; and this is a property right. And it is limited only by the physical possibility of the adjoining landowner diminishing the oil and gas under one's land by the exercise of the same right of capture. The following decisions discuss the law of capture as applied in this state: Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566; H.&T.C.Ry.Co. v. East, 98 Tex. 146, 81 S.W. 279, 66 L.R.A. 738, 107 Am. St. Rep. 620, 4 Ann. Cas. 827; Prairie Oil & Gas Co. v. State (Tex. Com. App.) 231 S.W. 1088, 1089. Both rules are subject to regulation under the police power of a state. (Emphasis ours)

"* * **"

You will notice that among the authorities cited by the court appears the Fast case which is the principal case defining water rights in this State in this connection.

Upon the basis of the authorities heretofore cited, it is the opinion of this department that the State may impose reasonable regulations for the preservation and conservation of underground, subterranean, and percolating waters within this State.

In answer to your second question, therefore, you are respectfully advised that under Acts 1931, 42nd Legislature, Chapter 261, the Board of Water Engineers may require of owners of water wells, other than artesian, annual reports covering the same information required by Article 7615, V.A.C.S., of owners of artesian wells, if in the exercise of sound discretion the Board determines that such reports are essential for the "conservation, protection, preservation and distribution" of the underground, subterranean, and percolating waters of this State.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *James P. Hart*
James P. Hart
Assistant

By *George W. Sparks*
George W. Sparks

GWS:mp

APPROVED MAR 11, 1941

*Gerald C. Mann*
ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN