**SMITH–SOUTHWEST INDUSTRIES et al., Appellants,**

v.

**FRIENDSWOOD DEVELOPMENT CO. et al., Appellees.**

**No. 16794.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Jan. 27, 1977.
Rehearing Denied Feb. 24, 1977.

Joseph D. Jamail, S. Gus Kolius, Robert F. Stein, Houston, for appellants.

Fulbright & Jaworski, Kraft W. Eidman, David J. Beck, Sim T. Lake, III, Robert D. McGee, Houston, for appellee Friendswood Development Co.

McGinnis, Lochridge & Kilgore, Robert C. McGinnis, Peter M. Lowry, Austin, for appellee Exxon Corp.

Childs, Fortenbach, Beck & Guyton, Michael R. Waller, Houston, for Atlantic Richfield Co., Arco Chemical Corp. and Arco Chemical Co., a Division of Atlantic Richfield Co.

Baker & Botts, Finis E. Cowan, Houston, for Tenneco Chemicals, Inc.

Butler, Binion, Rice, Cook & Knapp, Frank J. Knapp, Houston, for E. I. DuPont de Nemours & Co.

Crain, Winters, Houser & Deaton, Newton M. Crain, Jr., Houston, for Rohm & Haas Texas, Inc.

Andrews, Kurth, Campbell & Jones, Bass C. Wallace, Houston, for Diamond Shamrock Corp.

Cox, Packenham & Roady, Joyce Cox, Houston, for Shell Oil Co.

Otis King, City Atty., James K. Gardner, Sr. Asst. Atty., for City of Houston.

Saccomanno, Clegg, Martin & Kipple, Burke Martin, Houston, for City of Seabrook.

Barlow, Lacy, Smith & Gay, Billy R. Smith, Houston, for Galveston County Water Control & Improvement District No. 12.

Vinson, Elkins, Searls, Connally & Smith, Dave McNeill, Jr., Houston, for Champion International Corp.

Sewell, Junell & Riggs, William E. Matthews, Houston, for Crown Central Petroleum Co.

Robert V. Shattuck, Jr., Galveston, for City of Galveston.

Knox W. Askins, LaPorte, for City of LaPorte.

Charles A. Easterling, Houston, for City of Pasadena.

Kiibler & Kiibler, Dick H. Gregg, Jr., LaPorte, for Harris County Water Control & Improvement District # 83 and City of Nassau Bay.

D. Neel Richardson, Baytown, for City of Baytown.

PEDEN, Justice.

This is an appeal from the granting of a summary judgment against the plaintiffs, Smith-Southwest Industries and other landowners similarly situated, who brought this class action against Friendswood Development Company and its corporate parent, Exxon Corporation, alleging that the severe subsidence of their lands was caused by the defendants' withdrawal of vast quantities of percolating underground water from wells located on defendants' land in the immediate vicinity of the plaintiffs' land.

The plaintiffs' petition alleged four theories of recovery: (1) nuisance, (2) negligence, (3) intentional interference with appellants' property by way of the diversion of water onto and across their property and (4) wrongful and unconstitutional taking of property without just compensation and conversion of such property for private use. Friendswood and Exxon each filed a general denial, and Friendswood joined a number of parties as third-party defendants, alleging negligence and intentional unreasonable conduct and seeking contribution or indemnity.

■ The trial court had before it depositions, interrogatories and answers, affidavits, and exhibits but concluded, as a matter of law, that the plaintiffs had failed to state a cause of action against the defendants. The third party actions were also denied. A motion for summary judgment on the pleadings can be sustained in very limited situations, such as those in which the facts alleged by the plaintiff establish the absence of a right of action or an insuperable barrier to a right of recovery. *Swilley v. Hughes*, 488 S.W.2d 64 (Tex. 1972).

The appellants' petition recites that they are landowners in the area of Seabrook and Clear Lake, and as a class include all owners of fee simple and leasehold estates along the west bank of Galveston Bay from the north dike of the Houston Yacht Club, following the shore line south to the mouth of Clear Creek and include the entire shore line of Clear Lake, Armand's Bayou, and Taylor Bayou from the shore line to a contour line with elevation 15 feet above the shore line, excluding whatever land the appellees own. Some of the landowners use their property as residences, others for business purposes. The appellees own property inland from that owned by appellants and pump massive amounts of subsurface fresh water from their property to sell to industrial purchasers.

The appellants contend this extensive withdrawal of fresh water has proximately caused the sinking and loss of elevation above mean sea level of their property and the property of others similarly situated along the shores of Galveston Bay and

Clear Lake which has resulted in the destruction of the land and improvements by flooding. The appellants say that this is not a water rights case and that neither the trial court nor this court is called upon to decide any competing claims by property owners to any water rights. They contend that this case concerns damage to land and that their petition presents four individual causes of action upon which relief can and should be granted.

The appellees' position is that whether the damage results from the lowering of the water table, from destruction of wells, or from subsidence, the damage is damage to land resulting from the exercise of a neighboring owner's right to the unlimited withdrawal of water beneath his land. They say that in Texas there is no right to recover for damages resulting from withdrawal of underground water or to enjoin withdrawal, regardless of the fact that neighboring lands sustain damage.

The appellants' eight points of error are that their petition: (1) states a cause of action in nuisance and (2) raises genuine issues of material fact as to the maintenance of a nuisance in fact by appellees Friendswood and Exxon; (3) states a cause of action in negligence and (4) raises genuine issues of material fact of the negligence of appellees Friendswood and Exxon; (5) states a cause of action for the intentional interference with appellants' property by way of the diversion of the waters of Galveston Bay and Clear Lake onto and across the property of the appellants and (6) raises genuine issues of material fact for the intentional interference with appellants' property by way of such diversion; (7) states a cause of action for the wrongful and unconstitutional taking of property without just compensation and conversion of such property for private use, and (8) raises genuine issues of material fact for such taking and conversion for private use.

In support of their first four points of error the appellants argue that the appellees' motions for summary judgment are based on only one proposition: that since appellees' water wells were situated on their own land, the withdrawal of water therefrom is lawful and not actionable by appellants under any circumstances, even when such activity causes damage to the appellants' land. The appellants state that since they do not even allege the appellees' activity to be a nuisance per se, an unlawful activity in and of itself, the extent of appellees' ownership right to the ground water extracted is not relevant to the issue at hand. They allege that the type of nuisance here involved is a nuisance in fact, which consists of an activity or condition that, while lawful, becomes a nuisance by reason of the circumstances and surroundings. Further, that the doctrine of liability predicated upon the maintenance of a nuisance represents the recognition that all landowners, including appellants, have a basic right to the peaceful use and enjoyment of their own property and that such right must be viewed in context with the rights of the surrounding landowners; therefore, the asserted right to all the ground water they can extract must be compared to the rights of the appellant landowners, not to the water itself, but to the reasonable use and enjoyment of their surface estates.

The rules in the courts of the United States with respect to the right of a landowner to the abstraction and use of percolating water beneath his land are the "common law" or "English" rule and the "American" or "reasonable use" rule, which is also referred to as the doctrine of "correlative rights." 78 Am.Jur.2d 607, Water § 158. The American or reasonable use rule is that "the rights of each owner being similar and their enjoyment dependent on the action of other landowners, their rights must be correlative and subject to the maxim that 'one must so use his own as not to injure another,' so that each landowner is restricted to a reasonable exercise of his own rights and a reasonable use of his own property, in view of the similar rights of others." 78 Am.Jur.2d 607, Waters, § 158. The English rule of absolute ownership stems from *Acton v. Blundell,* 12 Meeson &

Welsby, 324, 152 English Reprint 1223 (1843), in which the court said:

"That the person who owns the surface may dig therein, and apply all that is there found to his own purposes, at his free will and pleasure; and that if, in the exercise of such right, he intercepts or drains off the water collected from the underground springs in his neighbor's well, this inconvenience to his neighbor falls within the description of damna absque injuria, which cannot become the ground of action."

As to their negligence cause of action, the appellants say that this court is bound by the extensive Texas case law that a property owner must use his own property so as not to injure that of another and that land ownership itself creates a duty to use reasonable care in the exercise of property rights incident to such ownership. They state they have raised fact issues as to appellees' negligence in that they alleged in their petition and showed by summary judgment evidence, among other things, that: (1) appellees proceeded to withdraw massive amounts of ground water with knowledge that it would cause damage to appellant landowners, (2) appellees negligently spaced their wells in too tight a pattern and placed them on the Galveston Bay and Clear Lake side of their land, thus concentrating the land subsidence, and (3) appellees have pumped too much water from these wells in too short a period of time, compounding the damaging effect. Further, that defendant Friendswood had sufficient surface water available to supply their customers.

We have found no Texas cases dealing directly with land subsidence caused by withdrawal of ground water. The appellants rely on several cases from other jurisdictions. In *State v. Michels Pipeline Construction Co., Inc.,* 63 Wis.2d 278, 217 N.W.2d 339 (1974), there was surface property damage caused by land subsidence, together with damage from the loss of water wells. The Wisconsin Supreme Court chose not to adopt the English rule, the reasona-

ble use rule, or the correlative rights rule but rather to adopt the rule set forth in Tentative Draft No. 17 of the Restatement of the Law of Torts, Second, as proposed on April 26, 1971, for adoption by the American Law Institute. (Tentative Draft No. 17 has been approved in principle by the Institute; see *State v. Deetz,* 66 Wis.2d 1, 224 N.W.2d 407 [Wis.1974], note 5 at page 415.)

Proposed Section 858A reads:

"NON–LIABILITY FOR USE OF GROUND WATER—EXCEPTIONS.

"A possessor of land or his grantee who withdraws ground water from the land and uses it for a beneficial purpose is not subject to liability for interference with the use of water by another, unless

"(a) The withdrawal of water causes unreasonable harm through lowering the water table or reducing artesian pressure,

"(b) The ground water forms an underground stream, in which case the rules stated in sec. 850A to 857 are applicable, or

"(c) The withdrawal of water has a direct and substantial effect upon the water of a watercourse or lake, in which case the rules stated in secs. 850A to 857 are applicable." *State v. Michels Pipeline Construction Co., Inc.,* supra.

In *Gamer v. Town of Milton,* 346 Mass. 617, 195 N.E.2d 65 (1964), the court held the defendant's negligent removal of a mixture of water and soil which caused land to subside was actionable and did not involve questions of the rights of ownership and use of water.

The American Law Institute's section dealing with subsidence, Section 818, was amended in May 1969 to read:

"Withdrawing Subterranean Substances. One who is privileged to withdraw subterranean water, oil, minerals or other substances from under the land of another is not for that reason privileged to cause a subsidence of the other's land by such withdrawal."

Before the revision, Section 818 read:

"To the extent that a person is not liable for withdrawing subterranean water

from the land of another, he is not liable for a subsidence of the other's land which is caused by withdrawal."

The appellees rely on jurisdictions that apply the English rule. Some hold that damage due to subsidence, like other kinds of damage to land, is *damnum absque injuria,* or damage without invasion of legal right.

The Texas Supreme Court in *City of Corpus Christi v. City of Pleasanton,* 154 Tex. 289, 276 S.W.2d 798, 801–802 (1955), spelled out its adherence to the English rule:

"With both rules before it, this Court, in 1904, adopted, unequivocally, the 'English' or 'Common Law' rule. *Houston & T. C. R. Co. v. East,* 98 Tex. 146, 81 S.W. 279, 280, 66 L.R.A. 738, 107 Am.St.Rep. 620. The opinion in the case shows quite clearly that the court weighed the merits of the two rules—'The practical reasons upon which the courts base their conclusions [applying the "English" rule] fully meet the more theoretical view of the New Hampshire Court [applying the "American" rule] and satisfy us of the necessity of the doctrine'—and, whether wisely or unwisely, made a deliberate choice. That the choice was considered and deliberate is made doubly clear when it is considered that the Court of Civil Appeals had made the opposite choice in the same case, 77 S.W. 646, 647, choosing to follow the reasoning of *Basset v. Salisbury Mfg. Co.* [43 N.H. 569] rather than that of *Acton v. Blundell.* It may be noted that the Court of Civil Appeals gave its approval to the holding of the Vermont Court that the right to take percolating water was 'limited to the amount necessary for the reasonable use of the land, as land', suggested that to apply the 'English' rule to the facts of the case 'would shock our sense of justice', and spoke of the rights of adjoining owners as 'correlative'. In differing with the Court of Civil Appeals this Court approved the language of the Supreme Court of Ohio in *Frazier v. Brown,* 12 Ohio St. 294, where it said: ' "In the absence of express contract and a positive authorized legislation, as between proprietors of adjoining land, the law recognizes no correlative rights in respect to underground waters percolating, oozing, or filtrating through the earth . . ." '

"The precise question this Court had before it in the East case was whether the Railway Company was liable in damages to East on a state of facts showing that by the use of a steam pump, installed in a well on its city lots, the Company had been capturing over 25,000 gallons of percolating water per day for use in locomotives and machine shops off of the premises where the well was located, and had thereby completely cut off the supply of water which had been entering East's well on his property. Thus it may be said that by its decision the court, in adopting the 'English' rule established at least this much: that an owner of land had a legal right to take all the water he could capture under his land that was needed by him for his use, even though the use had no connection with the use of the land as land and required the removal of the water from the premises where the well was located. The court had no occasion, of course, to actually decide any other question.

"Having adopted the 'English' rule it may be assumed that the Court adopted it with only such limitations as existed in the common law. What were these limitations? About the only limitations applied by those jurisdictions retaining the 'English' rule are that the owner may not maliciously take water for the sole purpose of injuring his neighbor, 55 A.L.R. 1395–1398; 67 C.J., sec. 257, p. 840; or wantonly and willfully waste it. 56 Am. Jur., sec. 119, p. 602; *Stillwater Water Co. v. Farmer,* 89 Minn. 58, [93] N.W. 907, 60 L.R.A. 875. There certainly was no limitation that prohibited the use of the water off of the premises where it was captured. Neither was there any restriction of its use to a particular area. 'Under the so-called "common-law" or "Eng-

lish" rule, which prevails in some jurisdictions, the right to extract artesian water for use outside the basin or district in which it is found would seem to be unrestricted.' 56 Am.Jur., Sec. 118, p. 601. Moreover, by its holding in *Texas Co. v. Burkett,* 117 Tex. 16, 296 S.W. 273, 278, 54 A.L.R. 1397, decided some ten years after the adoption of the Conservation Amendment to the Constitution, Article XVI, § 59, Vernon's Ann.St., and the enactment of Articles 7602, V.A.C.S. and 846, Penal Code, this Court established that under the common-law rule there was no restriction against the sale of percolating waters for industrial uses off of the land. The Court said the waters 'were the exclusive property of Burkett [the owner of the land on which the water was captured], who had all the rights incident to them that one might have as to any other species of property.' "

In *Bartley v. Sone,* 527 S.W.2d 754, 760 (Tex.Civ.App.1975, writ ref. n. r. e.), the court stated:

"This rule relating to ownership of water flowing from springs stems from the rule that the owner of land owns the water under the surface, generally referred to by hydrologists as 'ground water.' Our statutory law recognizes this principle, although the legislature uses the term 'underground water,' rather than 'ground water.' Our statutes define 'underground water' as 'water percolating below the surface of the earth and that is suitable for agricultural gardening, domestic or stock raising purposes, but does not include defined subterranean streams or the underflow of rivers.' Tex.Water Code Ann. § 52.001(3) (1972). The Water Code expressly recognizes 'the ownership and rights of the owner of the land . . in underground water . . .' Tex. Water Code Ann. § 52.002 (1972). These statutory provisions are but the embodiments of well settled rules relating to the ownership of percolating waters. *Houston & T. C. R. v. East,* 98 Tex. 146, 81 S.W. 279 (1904); Anno.: 55 A.L.R. 1385, 1390–95 (1928)."

Among jurisdictions that apply the English rule we have found no subsidence cases holding that a cause of action may be grounded on a neighbor's withdrawal of percolating waters from his own land, absent malice or waste.

In *Finley v. Teeter Stone, Inc.,* 251 Md. 428, 248 A.2d 106 (1968), the plaintiffs sued for damages for subsidence because the defendant's quarrying operations had caused the plaintiffs' land to be dewatered, thereby causing the subsidence. The court stated:

"The English Rule is sometimes referred to as the 'Absolute Ownership Rule,' as the owner of the surface of the land had the absolute right to intercept underground percolating water before it left his property for whatever purpose he pleased and without regard to the effect of such interception on the owner on neighboring land.

". . . It is apparent that under the English rule, [defendant] would have the absolute right to use the percolating waters under its land for any purpose without regard to the effect of that use on the [plaintiff's] land."

It should be noted, however, that the plaintiff in the *Finley* case did not contend that the defendant company had acted in a negligent manner. In our case we have noted that the plaintiffs do earnestly contend that the defendants were negligent in the drilling and operation of their water wells.

In a recent English case, *Langbrook Properties, Ltd. v. Surrey County Council,* 3 All E.R. 1424 (Ch.1969), the plaintiff sought recovery in negligence or nuisance. After making a comprehensive review of English law on the subject, the court concluded that one whose land has subsided as a result of the abstraction by his neighbor of the water percolating under that land cannot, in law, maintain an action for consequential damage either in nuisance or in negligence. The court held that the plaintiff's damage is damnum sine injuria.

■ Two basic principles of law appear to be applicable: the English rule of abso-

lute ownership and the well-settled Texas principle of law that imposes upon all persons a duty to use due care in the use of their property or the conduct of their business to avoid injury to others. *G., C. & S. F. Ry. Co. v. Oakes,* 94 Tex. 155, 58 S.W. 999, 1001 (1900); *Turner v. Big Lake Oil Co.,* 128 Tex. 155, 96 S.W.2d 221 (1936). The court stated in *Oakes*:

"Since the owner may use his land as he chooses, if he does not violate any law, and is not to be substantially deprived of its use or of the ordinary pursuit of his own interests, but, at the same time, is required in its use to avoid injury to another, it at once follows that he may be required to forego a particular use when it is not essential to the substantial enjoyment of his property, and is fraught with unreasonable loss to his neighbor. On the other hand, the particular use may be so important to the owner, and the loss or inconvenience to his neighbor so slight compared to his, were he forbidden to so employ his property, that it would be unreasonable and unjust to impose such a restriction. In such cases, it is evident that all of the circumstances of the situation must be taken into consideration. The importance of the use to the owner, as well as the extent of the damage to be inflicted upon his neighbor, and the rights of the parties, are to be adjusted in a practical way; the question being whether or not the proposed use is a reasonable one, under all the circumstances. 1 Wood, Nuis. 3; Bish.Noncont. Law, §§ 418, 842. We are unable to discover that the law does, or, from the nature of the subject, can, furnish a more definite rule. For this reason, we think it cannot be laid down as a rule of law, applicable to all circumstances and situations, that one who plants Bermuda grass upon his premises makes himself liable for any damage that may result to his neighbor, nor, on the other hand, that he may not be liable under some circumstances and conditions. As is said in some authorities, there must, in such inquires where rights and interests seem to conflict, be a balancing of them."

In *Turner v. Big Lake Oil Co.,* 128 Tex. 155, 96 S.W.2d 221 (1936), the Texas Supreme Court said at page 223 that "acts lawful in themselves done by one upon his own premises which may result in injury to another if not properly done or guarded" can become a nuisance if performed in a negligent manner.

The court said in *Storey v. Central Hide and Rendering Co.,* 148 Tex. 509, 226 S.W.2d 615, 617 (Tex.1950): "a lawful business may become a nuisance in fact when it is operated in such a place or manner as seriously to interfere with the enjoyment of life and property." It held that a jury finding that a rendering plant constituted a nuisance did not entitle the plaintiffs to an injunction abating the plant as a matter of right but that the trial court should have received testimony offered by the plant on the balancing of equities.

Because of a landowner's absolute right to take all of the water which he can produce from his land, the fact that this taking causes the land of others to subside will not, standing alone, give them a cause of action. But if the landowner is negligent in the manner by which he produces the water, and the negligence is a proximate cause of the subsidence of another's land, the fact that he owns the water produced will not insulate him from the consequences of his negligent conduct.

"Processes of dry logic halt at platting a line whereby that which is permitted and that which is forbidden are laid to respective sides (even as it halts in allocating degrees in causation and required prudence and at absolutism in many other jural subjects) and impel us to be content with the general pronouncement that injurious results of the consequential user are damnum absque or damnum injuria, and absolutely so or contingent upon exercise of due prudence, as circumstances may require.

"Yet the law, in its practical workings, we apprehend, thus resolves many of the seeming contradictions. If the purpose be lawful, physical trespass absent, pri-

mary use reasonable, and manner of that use duly careful, consequences are damnum absque; otherwise, injury within proximate causation is redressable. This would appear to have support in 'blasting' and 'explosion' cases (see *Ft. W. & D. C. Ry. Co. v. Beauchamp,* 95 Tex. 496, 68 S.W. 502, 58 L.R.A. 716, 93 Am.St.Rep. 864; 11 R.C.L. 673, 674; 19 Cyc. 7, 8), in which liability for injuries produced through vibration and shock alone is made to turn upon use or omission of due care in starting the vibrative or concussive waves, and in 'fire' cases (see *Seale v. G., C. & S. F. Ry. Co.,* 65 Tex. 274, 57 Am.St.Rep. 602), upon caution observed or forgotten in the act which started or which failed to halt the elements in its journey to neighboring premises." *Comanche Duke Oil Co. v. Texas Pacific Coal & Oil Co.,* 298 S.W. 554, 560 (Tex. Com.App.1927).

We sustain the appellants' first four points of error. We cannot say that they failed to state a cause of action against the appellees based on the theories of negligence and of nuisance in fact. Having thus ruled, we do not reach the appellants' other points of error.

We also grant the cross-point of appellee Friendswood Development Company, which is that if the summary judgment in its favor should be reversed, this court should also reverse the trial court's summary judgment against Friendswood on its third-party action for indemnity and contribution against several municipalities and industries that also withdraw underground water in the area in question.

We reverse and remand the trial court's order granting summary judgments on the pleadings in favor of 1) the appellees and 2) the third-party defendants.