**CITY OF DEL RIO, Appellant,**

v.

**CLAYTON SAM COLT HAMILTON TRUST, Appellee.**

No. 04–06–00782–CV.

Court of Appeals of Texas, San Antonio.

Feb. 27, 2008.

Rehearing Overruled Aug. 19, 2008.

Max Renea Hicks, Law Office of Max Renea Hicks, Austin, appellant.

Michael C. Boyle, William T. Armstrong, III, Langley & Banack, Inc., Frank Sten-

ger–Castro, Phil Steven Kosub, San Antonio, Sydney W. Falk, Jr., Douglas G. Caroom, Bickerstaff Heath Delgado Acosta LDLP, Austin, for appellee.

Sitting: CATHERINE STONE, Justice, KAREN ANGELINI, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by KAREN ANGELINI, Justice.

At issue in this appeal is whether the warranty deed's reservation of "all water rights" prevents the City of Del Rio from drilling and pumping groundwater from beneath the fifteen-acre tract it purchased from the Clayton Sam Colt Hamilton Trust. Because we hold that the reservation does prevent the City of Del Rio from drilling and pumping groundwater from beneath its tract, we affirm the judgment of the trial court.

### BACKGROUND

The relevant facts have been stipulated to by both parties. The Clayton Sam Colt Hamilton Trust ("the Trust") owns a 3,200–acre tract of land, called "the Moore Ranch," in Val Verde County. This ranch is in Del Rio's extraterritorial jurisdiction and is not subject to regulation by any groundwater conservation district. Although the ranch does not have any surface water, it does have lying underneath it a groundwater formation that is part of the Edwards–Trinity (Plateau) Aquifer. Although no one lives on the ranch, the trustee and his son (the sole beneficiary of the trust) visit occasionally.

In 1997, the Trust sold fifteen acres from the ranch's western border to the City of Del Rio for $56,000. This fifteen-acre tract borders a state highway to the

west. To the south, north, and east, it is surrounded by the Moore Ranch.

The warranty deed, dated January 8, 1997, conveying the fifteen-acre tract to the City provides the following:

**Property (including all improvements thereon situated):**

SITUATED IN VAL VERDE COUNTY, TEXAS TO–WIT:

**SURFACE ESTATE ONLY** described as fifteen (15 acres) more fully described in Exhibit "A" attached hereto and incorporated herein for all purposes.

**SAVE AND EXCEPT** and Seller shall reserve unto Seller, its successors, heirs and assigns forever all of the oil, gas, and other mineral rights in, on and under and that may hereinafter be produced and saved therefrom beginning at 100 feet below the surface of the land and deeper. Seller hereby agrees and does hereby relinquish all rights of ingress and egress in and on the property and covenants that no portion of the property being conveyed under the terms of this contract shall be used for any operations either of drilling, exploration, or producing of the minerals reserved by the Seller hereunder and Seller agrees there will be no surface operations whatsoever involving this property so conveyed.

Grantor RESERVES unto Grantor, its successors, heirs and assigns forever *all water rights associated with said tract,* however, Grantor may not use any portion of the surface of said tract for exploring, drilling or producing any such water.

(emphasis added).

In 2000, three years after the City purchased the fifteen-acre tract, the City realized that it needed to augment its municipal drinking water supply. So, it decided to drill a water well ("the Y-well") on the fifteen-acre tract. A year and a half later, the City began drilling on the tract and had the well tested for ten hours, pumping approximately 500 gallons per minute and producing several hundred thousand gallons of groundwater. The Y-well was completed in the summer of 2002, at a cost to the City of about $850,000.

About six months after the City had the pump tested, Hamilton, the trustee of the Trust, during one of his infrequent visits to the Moore Ranch, noticed the drilling activity on the fifteen-acre tract. He then had the Trust's attorney send the City a letter demanding that it neither produce nor capture any water from the Y-well. A short time later, the Trust's attorney gave formal notice of a $500,000 claim against the City. The Trust also drilled four new water wells on the Moore Ranch, stretching in a line from just south of the City's fifteen-acre tract to the southeast corner of the ranch. Each well can produce several thousand gallons of groundwater a minute.

After the City rejected the Trust's claim, the Trust filed suit against the City, seeking a declaratory judgment that (1) it owned the groundwater beneath the fifteen-acre tract, and (2) the City's claim of ownership to those water rights should be rejected. The Trust also sought monetary damages for unconstitutional taking and action for trespass.

The City responded with a counterclaim, seeking a declaratory judgment that the warranty deed did not leave the Trust with "right, title, or interest in any groundwater pumped to the surface by the City" on the fifteen-acre tract and that any groundwater pumped to the surface was the City's property. Alternatively, the City pled for condemnation of the water rights reserved by the Trust.

The parties agreed to sever their respective declaratory judgment actions (but not attorneys' fees) from the other issues and try the case on stipulated facts. The trial court concluded (1) the water rights reservation was valid and enforceable; (2) the City's argument that groundwater, until captured, cannot be the subject of ownership was an incorrect statement of the law; and (3) ownership to the groundwater rights beneath the fifteen-acre tract belonged to the Trust. The City appeals.

## DISCUSSION

### A. Standard of Review

Here, the trial court decided the declaratory judgment issues upon stipulated facts. And, the construction of an unambiguous deed is a question of law. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). Therefore, our standard of review is de novo. *See Karm v. City of Castroville*, 219 S.W.3d 61, 63 (Tex.App.-San Antonio 2006, no pet.) ("To the extent that the issues involved stipulated facts and only questions of law were presented to the trial court, this court reviews the trial court's decision de novo.").

### B. Rules of Interpretation of a Deed

Our primary duty when construing a deed is to ascertain the intent of the parties from its four corners. *Luckel*, 819 S.W.2d at 461; *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex.1986). "[I]t is the intent of the parties as expressed within the four corners of the instrument [that] controls." *Altman*, 712 S.W.2d at 118. Thus, we may not ignore the plain language of the document. *See Luckel*, 819 S.W.2d at 462. And, we must assume that the "parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement." *Altman*, 712 S.W.2d at 118. Thus, when ascertaining the parties' intent as stated in

an instrument, we must harmonize all parts of a deed, even if those parts appear contradictory or inconsistent, so as to give effect to all its provisions. *Luckel*, 819 S.W.2d at 462; *see also Altman*, 712 S.W.2d at 118. Finally, in general, we view grants in a deed expansively and reservations restrictively. *See Chambers v. Huggins*, 709 S.W.2d 219, 222 (Tex.App.-Houston [14th Dist.] 1986, no writ).

### C. Reservation of Oil, Gas, and Other Minerals

In its brief, the City begins by arguing that the Trust's reservation of oil, gas, and other minerals does not include sub-surface water. Therefore, it argues that the reservation of oil, gas, and other minerals does not deprive the City of its right to drill into the sub-surface water formation and pump from it. In response, the Trust states that it is not relying on its oil, gas, and mineral reservation. Thus, this is not an issue on appeal.

### D. Reservation of All Water Rights Associated with Said Tract

#### 1. Can you reserve water rights unless you have reduced the water to possession?

With respect to the Trust's reservation of "all water rights associated with said tract" in the deed, the City and the Trust disagree about the relationship between the "rule of capture" and the "absolute ownership of groundwater." We agree with the Trust's analysis.

The City argues that the Trust's "water rights" reservation cannot prevent it from drilling into the sub-surface water. According to the City, pursuant to the rule of capture, the corpus of groundwater cannot be "owned" until it is reduced to possession. And, because the Trust never drilled or pumped on the fifteen-acre tract, the City argues that it never reduced the

groundwater underneath the tract to its possession.

Further, the City argues that the "absolute ownership" doctrine does not refer to ownership of the actual corpus of water beneath the land but only to a right of the surface estate owner to acquire possession of the water. Thus, the City reasons that the Trust only had a right to obtain possession of the sub-surface water but that it never did so because it did not drill or pump sub-surface water from the fifteen-acre tract, thereby reducing the water to its possession. And, because a "grantor in the Trust's position cannot reserve a property right through a warranty deed if its does not already hold the property right ... the Trust did not acquire ownership of the water's corpus though its 'water rights' reservation in the warranty deed conveying the fifteen-acre tract to the City."

The Trust calls this argument by the City, its "bucket" argument. The Trust reasons that if a property owner's interest in groundwater only vests once the water is reduced to possession, then groundwater conveyances "would essentially be defined by the size of the bucket transporting the water."

> In other words, only when the groundwater is drawn to the surface and placed in a container for transport off the surface would a conveyance or reservation be effective. A landowner could not create a *present* transfer of a groundwater interest in place even if the parties contemplated pumping the water to the surface the next day. Each time one wished to convey groundwater, the landowner would first have to raise the water to the surface, and then deliver it to the transferee. The sheer practical complexities of the City's position would essentially bring to a standstill any attempt to transfer groundwater in this State.

According to the Trust, the City has confused the interplay between the separate and distinct concepts of the rule of capture and the absolute ownership theory. We agree.

██ The Texas Supreme Court has stated that percolating water is a "part of, and not different from, the soil" and the landowner is the "absolute" owner of it. *Houston & T.C. Ry. Co. v. East*, 98 Tex. 146, 81 S.W. 279, 281 (1904); *see, e.g., City of Sherman v. Pub. Util. Comm'n*, 643 S.W.2d 681, 686 (Tex.1983) ("The absolute ownership theory regarding groundwater was adopted by this Court in *Houston & T.C. Ry. Co. v. East*, 98 Tex. 146, 81 S.W. 279 (1904)."); *Friendswood Dev. Co. v. Smith–Southwest Indus., Inc.*, 576 S.W.2d 21, 25–27 (Tex.1978). "Water, *unsevered expressly by conveyance or reservation*, has been held to be part of the surface estate." *Sun Oil Co. v. Whitaker*, 483 S.W.2d 808, 811 (Tex.1972) (emphasis added). And, groundwater is the "exclusive property" of the owner of the surface and "subject to barter and sale as any other species of property." *Texas Co. v. Burkett*, 117 Tex. 16, 296 S.W. 273, 278 (1927). Thus, under the absolute ownership theory, the Trust was entitled to sever the groundwater from the surface estate by reservation when it conveyed the surface estate to the City of Del Rio.

██ A corollary to this absolute ownership theory is the rule of capture. *See City of Sherman*, 643 S.W.2d at 686 ("A corollary to absolute ownership of groundwater is the right of the landowner to capture such water."). The rule of capture, a doctrine in both oil and gas law and water law in Texas, was first adopted by the supreme court in *Houston & T.C. Ry. Co. v. East*, 98 Tex. 146, 81 S.W. 279, 281 (1904). *See Friendswood*, 576 S.W.2d at 25–27. "Under the rule of capture a person owns all of the [water or] oil and gas

produced by a well bottomed on his own land, even though the well may be draining the substances from beneath other property." 1 ERNEST E. SMITH & JACQUELINE LANG WEAVER, TEXAS LAW OF OIL & GAS § 1.1(A) (2d ed.2007). Further, the rule of capture denies the landowner whose property is being drained any judicial remedy; he can neither enjoin production from the draining well, nor obtain an accounting, nor obtain other equitable relief. *Id.* This rule probably arose out of practical necessity-the inability of courts to determine the source of a well's production. *Id.* Thus, the rule as developed was "a doctrine of nonliability for drainage, not a rule of property." *Id.; see also Riley v. Riley,* 972 S.W.2d 149 (Tex.App.-Texarkana 1998, no pet.) ("The rule of capture is a doctrine of nonliability for drainage."). "It did not give an operator the 'right' to drain his neighbor's tract but merely refused to impose liability for doing so." 1 ERNEST E. SMITH & JACQUELINE LANG WEAVER, TEXAS LAW OF OIL & GAS § 1.1(A) (2d ed.2007).

In applying the rule of capture to the case at hand, if the City of Del Rio owned the groundwater beneath the fifteen-acre tract and began pumping water from beneath the surface, the Trust would have no judicial remedy for any drainage of groundwater from beneath its own 3000+ acre tract. However, the City of Del Rio does not own the water beneath the fifteen-acre tract. In the warranty deed, the Trust conveyed the surface estate to the City but reserved "all water rights." Thus, pursuant to the deed, the City never obtained ownership of the groundwater. And, because it does not have ownership of the groundwater, it cannot rely on the rule of capture.

*2. Can you sever the groundwater estate from the surface estate when all rights of access to the surface estate are relinquished?*

The City also argues that the Trust's "water rights" reservation cannot prohibit the City from drilling and pumping water on its fifteen-acre tract. According to the City, "Texas courts do not recognize a common law right to sever the groundwater estate from the surface estate in a situation in which all rights of access to the surface estate for reaching the groundwater estate are relinquished." The City reasons that because the Trust expressly and unequivocally relinquished its right of access to the fifteen-acre tract in the deed, the groundwater estate could not be severed from the surface estate. Thus, the City argues that the Trust's conveyance of the surface estate included the groundwater estate. And, because the groundwater estate was not severed from the surface estate, the City has the right to drill and pump the groundwater underneath the fifteen-acre tract. We disagree.

In support of its position, the City argues that any construction allowing the groundwater estate to be severable from the surface estate even though the grantor did not reserve right of access to the surface estate would "run afoul of the Texas Constitution's prohibition against the establishment of perpetuities." *See* TEX. CONST. art. I, § 26; *Kelly v. Womack,* 153 Tex. 371, 375, 268 S.W.2d 903, 905 (1954). According to the City, because the Trust did not reserve the right of access to the surface estate, "the Trust's proposed reading of the contract would take exercise of that [water rights] interest, as well as the water itself, out of commerce forever." And, the City emphasizes that public policy favors land use.

This argument by the City, however, ignores the fact that the Trust does not need access to the fifteen-acre surface estate to pump the groundwater from beneath the fifteen-acre tract. The Trust can access the groundwater from the adja-

cent Moore Ranch. Thus, because it can access the groundwater beneath the fifteen-acre tract from the adjacent Moore Ranch, its relinquishment of its right to enter the surface estate of the fifteen-acre tract is not a relinquishment of its water rights reservation or of its right to capture the water beneath the tract. *See City of San Augustine v. Johnson,* 349 S.W.2d 653, 655 (Tex.App.-Beaumont 1961, writ ref'd n.r.e.) (holding that even though the city condemned 40.8 acres of the defendant's surface estate, the defendant's mineral estate beneath that 40.8 acres still had value because he could perform directional drilling from his adjacent land). Therefore, because the Trust will have access to the groundwater beneath the fifteen-acre tract from its adjacent lands, the water rights reservation in the deed does not violate the Texas Constitution's prohibition against perpetuities.

We also note that the City argues that the Trust's reservation of "all water rights" was not sufficient to prohibit it from pumping water from beneath the fifteen-acre tract. According to the City, "[o]nly through the most strained interpretation of the Trust's reservation of 'water rights' may the Court reach the conclusion that there is an accompanying prohibition on the City pumping rights." The City, however, cites no authority for this assertion.

### CONCLUSION

For the reasons stated, we affirm the judgment of the trial court.